Davis Bros. v. Callahan.

DAVIS BROTHERS, Respondents, v. MICHAEL CALLAHAN *et al.*, Appellants.

### Kansas City Court of Appeals, April 6, 1896.

1. **Emblements:** DEFENDANT'S EJECTMENT: GROWING CROP. Where on writ in an ejectment suit possession of the land is delivered to the plaintiff, the growing crop thereon is also delivered and the defendant in execution can not maintain trover for the immature and growing crops.

2. **Landlord and Tenant:** LEASE: LICENSE: ESTOPPEL. The evidence in this case in relation to an alleged contract between the parties is considered and *held* to be insufficient to show a lease, an estoppel, or a license.

3. **Frauds and Perjuries:** PAROL CONTRACT FOR POSSESSION. A parol contract for the future delivery of the possession of land is an interest in the land itself and within the statute of frauds.

4. **License:** CONSIDERATION: EXECUTOR. A parol license without consideration is revokable at pleasure and if merely executory can not become operative until the contingency transpires and its execution can not be enforced.

*Appeal from the Nodaway Circuit Court.*—HON. DAVID REA, Special Judge.

REVERSED.

*H. S. Kelley, J. B. Newman,* and *P. L. Growney* for appellants.

(1) The appeal from that judgment operated as a *supersedeas;* simply suspended the judgment but did not destroy or impair it. The law is that, if after a judgment in ejectment the unsuccessful defendant sows a crop on the land, and after ouster under the execution, cuts and stacks it on the land, the judgment owner may maintain replevin for the crop. *Oyster v. Oyster,* 32

Mo. App. 270; *Salmon v. Fewell*, 17 Mo. App. 118; *Steele & Co. v. Faber*, 37 Mo. 80; Jones on Mort., secs. 697, 780. So, if the defendant puts in a crop pending an ejectment, which is harvested but not removed therefrom at the time plaintiff is put in possession under and by virtue of the judgment in the ejectment suit, the crop belongs to the plaintiff. *Samson v. Rose*, 65 N. Y. 411; *McLain v. Bovee*, 24 Wis. 295; *Gardner v. Kersey*, 40 Ga. 664; 4 Am. and Eng. Encyclopedia of Law, pp. 887–890, notes, crops. The law is, that when a judgment is affirmed the clerk of the circuit court may issue execution thereon without an order of court. *Wilbur v. Hall*, 17 Mo. 471; 12 Mo. 603; *Walter v. Taber*, 21 Mo. 75; *Slagel v. Murdock*, 65 Mo. 525; 23 Mo. App. 495; *Block v. Morrison*, 112 Mo. 343. (3) The plaintiffs' action was trover for the wrongful conversion of corn and cornstalks, it sounded in tort. They could not have maintained trespass for the taking of the corn; nor replevin to recover it, because they were lawfully out of possession of it; nor did they have such property in it as would enable them to maintain trover for its conversion. *McAllister v. Lawler*, 32 Mo. App. 91; *Adams v. Leip*, 71 Mo. 597; *Jenkins v. McCoy*, 50 Mo. 348; 46 Mo. 438; 46 Mo. 66; 32 Mo. App. 419; 46 Mo. App. 11; 41 Mo. App. 439; *Johnson v. Fish*, 38 P. 979; *Page v. Fowler*, 37 Cal. 100; 39 Cal. 412; *Grooms v. Almstead*, 35 P. (Cal.) 1021; *Rowell v. Klein*, 44 Ind. 290; *Carlisle v. Killebrew*, 6 Lawyers' Rep. Annotated (Ala.), p. 617; *Slagel v. Murdock*, 65 Mo. 522.

*S. R. Beech* and *T. J. Johnston* for respondents.

(1) Plaintiffs, having been in possession of said land for several years prior to 1894, cultivating the same at a price per acre which had been fixed by an

agreed statement of the parties and filed in the case about the middle of May, 1894, obtained from Callahan the right to crop the land for that year before they began to do anything toward planting it. This alone gave them the right to the crop raised that year. (2) Because plaintiffs paid Mike Callahan the rental value of the land as agreed and at the price agreed by the parties (and filed in the ejectment case) up to December 26, 1894. The plaintiff in ejectment can not collect the rents and also have the crop grown by the defendant during the time. The first proposition is so elementary as to need no citation of authorities. To the second we cite: *Gardner v. Kersey*, 99 Am. Dec. 484; s. c., 39 Ga. 664; *Apalachicola v. Land Co.*, 79 Am. Dec. bottom pp. 287, 288; s. c., 9 Fla. 340. (3) Because plaintiffs, having been in possession of the land, cultivating the same prior to any action had in the supreme court in the ejectment suit, and having planted and raised the crop thereon, and the final decision of the supreme court not having been made in said cause until November 20, 1894, and mandate filed with clerk of the circuit court December 4, 1894, the plaintiffs having given a *supersedeas* bond in their appeal from the judgment of March 24, 1894, were in the possession in contemplation of law until said December 4, 1894; and said corn having fully matured, and having paid Mike Callahan the rental value of said land up to December, 1894, plaintiffs were entitled to said corn without any previous contract or license from said Mike Callahan. (4) There was ample evidence upon which the court might find there was a leasing of the land by Mike Callahan to the plaintiffs for the season of 1894, or a license from him to them to cultivate said land for that year, and such contract in whichever form we may consider it, was not within the statute of frauds. The right acquired by plaintiffs

by said contract was not an interest in the land—being but for the season. *Garth v. Caldwell*, 72 Mo. 622, *loc. cit.* 627; R. S. 1889, p. 1257, sec. 5186. (5) Even should the agreement between Mike Callahan and the Davises be construed to be a license only, such license, after plaintiffs had planted and cultivated the corn, could not then be revoked by Callahan or the decision of any court under the facts in the case. *School District v. Lindsay*, 47 Mo. App. 134; *Morgner v. Biggs*, 46 Mo. 66, 67; *Reriek v. Kern*, 16 Am. Dec. 732, *loc. cit.* bottom p. 736. (6) The plaintiffs, upon the lease or license from defendant, Mike Callahan, planted and cultivated the corn in good faith, relying upon their right under said contract to do so, and defendants are clearly estopped, under such state of facts, to claim the corn, as they are attempting to do in this case. *Bank v. Frame*, 112 Mo. 502, *loc. cit.* 513.

SMITH, P. J.—This is an action by plaintiff to recover damages for the wrongful conversion by defendants of certain corn and cornstalks.

It appears from the abstract of the record before us that on the twenty-fourth day of March, 1892, the defendant, Michael Callahan, in an action of ejectment against the defendants therein (plaintiffs here) recovered judgment for the possession of a certain eighty acre tract of land; that the defendants thereupon took an appeal to the supreme court, entering into a *supersedeas* bond; that afterward, on June 12, 1894, the latter court, by its judgment, affirmed that of the circuit court in the cause, and caused its mandate to issue to said circuit court, which was filed in the office of the clerk of said circuit court, on the ninth day of July, 1894, and that on said last named day, the said clerk of said circuit court issued and delivered to the sheriff an execution and writ of possession on said judgment,

under which said sheriff, as appears by his return thereon, with the assent of defendants, removed them from the land, and delivered the peaceable possession thereof to Michael Callahan, the plaintiff therein.

At the time the defendant Callahan was placed in possession of the land by the sheriff, under the writ, there was standing and growing thereon about sixty acres of corn, which had been planted by the plaintiffs, the Davises, in the preceding month of May. The corn so standing and growing was then about knee high, requiring further cultivation before it could be "laid by." The defendant, Michael Callahan, after being so placed in possession, proceeded to finish the cultivation of the corn, and shortly thereafter conveyed the land by deed to the other defendant, John Callahan, who gathered and cribbed the corn. This action is to recover the value of the corn.

There was a trial in the circuit court, where plaintiffs had judgment, and the defendants have appealed.

A leading question in the case is whether the placing of the defendant, Michael Callahan, in the actual possession of the land under the writ had the effect to vest in him the title of the immature crop of corn then standing thereon. From the time the defendant, Michael Callahan, was placed in possession of the land, under the writ, he and his grantees ever afterward remained in the continuous and undisturbed possession. The plaintiffs were never after their removal, under the writ, again in possession. It stands admitted that the corn was planted by plaintiffs in May, 1894, while the judgment of ouster in the ejectment suit was in full force, though execution thereon was suspended. It is also undenied that at the time the defendant, Michael Callahan, was placed in possession of the land, the crop of corn standing thereon was immature. And the delivery of possession of the former was the delivery

of that of the latter, since the latter was a part of the land. *McIlvain v. Harris*, 20 Mo. 458; *Hayden v. Burkemper*, 101 Mo. 644.

Crops planted by an intruder, so long as they remain on the land unsevered, are the property of the owner of the land. *Baker v. McInturff*, 49 Mo. 505. The plaintiffs' possession of the land was wrongful, and if they were put out of such possession, under the writ, before they succeeded in maturing and removing the corn, they lost their title thereto, as against the defendant, the owner of the land. It is not seen that they were in any better situation than if they had abandoned the land, instead of being dispossessed under the writ on the ejectment judgment. It has been decided that in cases of the latter kind, after the abandonment, the title to the growing crop passes to the owner of the land. *Jenkins v. McCoy*, 50 Mo. 348; *Adams v. Leip*, 71 Mo. 598; *Oyster v. Oyster*, 32 Mo. App. 270; *McAllister v. Lawler*, 32 Mo. App. 91. We are, therefore, of the opinion that the title to the crop of corn in question passed to defendant, Michael Callahan, and that the plaintiffs herein thereafter had no such title as would support this action.

But the plaintiffs contend that even if the law is as just stated, still the judgment must be upheld on the ground that the said corn crop was planted under a previous parol permission, given by the defendant, which was, in effect, either a lease or a license, and whether the one or the other, the defendant was estopped to claim title to said crop as against them. The judgment in the ejectment suit was that the plaintiff therein, Michael Callahan, recover possession of the land and $14.63 rents until the possession was delivered by the defendants therein. The defendants took an appeal and gave a *supersedeas* bond, and thus remained in possession during the pendency of the

appeal.    More than two years after the rendition of the judgment, and while defendants were so in possession and cultivating the same, raising annual crops thereon, one of them, John Davis, in a conversation with defendant Michael Callahan, in relation to planting a crop on the land for the ensuing crop year, told the latter that he would put the crop in anyhow, and the latter replied that, "You are liable to lose it," and that, "You had better not put in any."    The plaintiff, Davis, testified that later on he met defendant Michael Callahan again and the latter told him that he had seen his lawyer and that "he could go ahead with the crop and put it in the same as he had been doing," and that the former responded that he would see the other plaintiffs and that he did so and thereupon they put the crop in.    The plaintiffs insist that the effect of these conversations was to create a lease of the land. The possession of the defendants in the ejectment, after the judgment, was liable to be terminated at any time, by the affirmance of such judgment by the supreme court and the issue of the writ of possession requiring the sheriff to place the plaintiff in possession.    This was known to both parties at the time of the conversation already referred to.

Now, in view of this, what was meant by the declaration of said Callahan that the plaintiffs (defendants in the ejectment) could "go ahead with that crop and put it in the same as you have been doing?"    It is clear that the defendant Callahan did not intend to extend the possession of the plaintiffs beyond the time when he should be placed in possession under the judgment in the ejectment, for if he had intended to consent to a change in the conditions under which the plaintiffs held possession, he would not have said, as he did, in effect, that the plaintiffs could continue to put in the crop as they had been doing.    Words, no doubt, of

very different significance would have been used, if the defendant Callahan had intended to deprive himself of the right to be placed in possession, during the ensuing crop year, if the ejectment judgment should be affirmed during that time. Evidently the defendant was guarded in his language. No doubt his attorney, Mr. Ellison, had advised him to speak as he did to plaintiffs in relation to the matter. The plaintiffs had, for the two preceding years, taken the risk of being dispossessed and losing the crops planted by them. And there was nothing in the language of defendant Callahan from which they were authorized to infer any change in the risk they had assumed when they took the appeal. It is quite evident that this was the understanding of the plaintiffs, for it appears from the sheriff's return on the writ, ordering him to place the defendant Callahan in possession, that the plaintiffs, the Davises, fully assented to their removal. If the Davises had supposed themselves in possession under the lease, they would, instead of assenting to their removal under the writ, have claimed the protection it would have offered them by invoking the injunction process of a court of chancery against the execution of the writ.

The undisputed evidence further shows that on the day the plaintiffs were removed, they inquired of the defendant Callahan whether he was going to take the corn, and being informed by defendant Callahan that he would unless the former would come on the next day and rent the land, and that unless they came on that day they would not get a chance to rent it, the plaintiffs agreed to come to defendant Callahan's house and there rent the land. They did not, however, do so. The plaintiffs, after their removal, made no further claim to the possession of the land, or to the crop thereon, until the defendant, John Callahan, had gath-

ered the crop. They then tendered the defendant, Michael Callahan, the balance due on the judgment for damages and rents; but this he refused to receive, referring them to the sheriff, to whom the same was paid. The plaintiffs now insist that part of this sum was for the rent of the land from the date of the removal until the twenty-sixth of December. An examination of the record has satisfied us that no part of the said amount paid was in discharge of the rent of the land after the removal, and that therefore the defendant did not receive rent for those months.

Nothing is perceived in the evidence tending to show a contract between plaintiffs and defendant, Michael Callahan, whereby the rights of the former, in respect to the possession of the land, were in any way enlarged or extended beyond those accorded them by the statute, as appealing defendants from the judgment in the ejectment.

Nor does it appear by the evidence that the plaintiffs would not have put in said crop of corn, but for the conversation with the defendant, Michael Callahan, nor that they were induced thereby to in any way alter their position to their prejudice; so that we can discover no grounds upon which to base an estoppel. Again, according to the evidence, the conversation which took place between plaintiff John Davis, and defendant Michael Callahan, was no more than if Callahan had said to Davis: "You (Davis) go on and put in your crop on the land, as you have been doing, and if I (Callahan) succeed in having the judgment in the ejectment affirmed, I will not turn you out under the writ for the delivery of the possession, but will allow you to continue in possession until the crop matures and you gather it."

Now this, if anything, was an agreement by defendant Callahan in relation to the future delivery of the

possession of the land. It was an agreement by defendant Callahan that he would give the plaintiffs the possession of the land when they became disentitled and he became entitled thereto. It was to become operative on the happening of a contingency. It is true it related to the mere possession; yet it was, nevertheless, an interest in the land itself and therefore within the statute of fraud. *Boyd v. Paul*, 125 Mo. 9; Browne on Stat. of Fraud, sec. 231.

And if it be regarded as a parol license, it was a mere gratuity, unsupported by any consideration whatever and was therefore revocable at the pleasure of the defendant, Michael Callahan. *Nelson v. Nelson*, 41 Mo. App. 131; *Pitzman v. Boyce*, 111 Mo. 387. If a license at all, it was merely executory. When the defendant was placed in possession of land, under the writ, and locked the gate leading into the field on which the corn was growing, this amounted to a revocation of the license to continue in possession. The license could not have been operative until the defendant Callahan was placed in possession, for prior to that time plaintiffs were in possession, and did not need the defendant's license unless their own possession was terminated before the crop was gathered by them. We do not think the evidence tends to disclose either a lease or license, and that being so, the plaintiffs could show no title to the crop of corn, for the value of which they sue.

In this view of the case, it becomes unnecessary to examine the instructions given by the court over the objections of defendants.

We think the judgment was for the wrong party and should be reversed, and it is so ordered. All concur.