JAMES L. STEPHENS, Plaintiff, Appellant, v. DAN-
IEL C. STECKDAUB, FRANK STECKDAUB,
and MARTIN STECKDAUB, Defendants, Ap-
pellants.

Kansas City Court of Appeals.    January 5, 1920.

1. **CROPS: Intruder: Ownership.** So long as a crop remains on the
land, unsevered, it is the property of the owner of the land al-
though planted by an intruder in adverse possession to the real
owner.

2. ———: **Lessee of Apparent Owner.** A defendant who leases land
from one who is the apparent owner of the land acquires no right
to the possession of crops planted by him, but, unsevered, greater
than that of the apparent owner.

3. **REPLEVIN: Failure to File Affidavit and Bond.** Under section
2637, Revised Statutes 1909, suit for replevin may be brought in
the circuit court and the cause may proceed to judgment although
the plaintiff had not filed affidavit or bond and the sheriff has not
seized the property.

4. ———: **Judgment for Rent in Ejectment: Election of Remedies.**
Where one who has taken judgment in ejectment for possession,
damages, and rent until restitution, refuses, after learning that a
crop has been planted, to accept the rents, he cannot be said to
have elected to take the rent instead of the crop, as the judgment
was taken before the crop was planted and when plaintiff did not
know a crop would be planted.

5. ———: **Inadequate Damages.** Athough the only evidence as to the
value of the crop for which the action is brought shows it to be of
greater value than the verdict of the jury indicates, the appellate
court is not at liberty to direct a judgment in plaintiff's favor for
a larger amount than found by the jury where the damages are
unliquidated.

Appeal from Boone Circuit Court.—*Hon. David H.
Harris*, Judge.

AFFIRMED.

*McBaine, Clark & Rollins* for plaintiff, appellant.

*Harris & Price* and *N. T. Gentry* for defendants
appellants.

BLAND, J.—This is a suit to replevin corn standing in a field. Plaintiff recovered a verdict and judgment and both parties have appealed to this court. We will first take up the points raised by the defendants. This case is a sequel to a long litigation conducted by Harriett McQuitty to establish by ejectment title to forty acres of land in Boone County, Missouri. [See McQuitty v. Wilhite, 218 Mo. 591; McQuitty v. Wilhite, 247 Mo. 163; McQuitty v. Steckdaub, 190 S. W. 590.] After the appeal in the Steckdaub case a change of venue was taken to the Randolph Circuit Court. In that court trial was had and a verdict and judgment was rendered on June 21, 1917, in favor of plaintiff for the possession of the land, $1600 damages and $13.33 per month rent and profits until restitution. From this judgment Steckdaub again appealed to the Supreme Court where the judgment was affirmed at the April term, 1918. In the meantime the court house at Moberly, Randolph County, Missouri, was destroyed by fire, causing the loss of the records in that case. Suit was filed to supply the judgment in that case, which resulted in favor of plaintiff on July 23, 1918. From this judgment Steckdaub sued on a writ of error in this court, which was later dismissed. On August 27, 1918, a writ of restitution was issued out of the circuit court of Randolph County based upon the judgment in ejectment obtained on June 21, 1918, as supplied by the judgment of July 23, 1918. Under this writ the sheriff of Boone County, on September 6, 1918, put Harriett McQuitty in the peaceful possession of the land and collected the rents, damages and costs of Steckdaub to that date. However, Harriett McQuitty, by her attorney, refused to receive the rents accruing after March, 1918, for the reason that there was a valuable corn crop standing upon the land which she desired to claim and apparently thought or feared that to collect the rents for the current season would prejudice her right to the crop.

Defendant D. C. Steckdaub, in August, 1917, rented to his sons, who are his co-defendants, the land in con-

troversy under an agreement providing that the father was to furnish the land, teams, tools and seed and his sons the labor. The crop was to be divided five-twelfths to the father and seventh-twelfths to the two sons. The sons plowed the land in the early fall of 1917 and planted the crop of corn in the Spring of 1918. On September 14, 1918, Harriett McQuitty conveyed the land by warranty deed to this plaintiff. The deed included "the crop of corn growing upon said 40 acres of land." On September 17, 1918, plaintiff went upon the land and cut a small shock of corn upon the premises. Some time prior to that plaintiff notified the defendants that the corn was his and for them not to remove any of it. On the 25th of September, 1918, plaintiff took three negroes out to the land and commenced to enclose the 40 acres with a fence. They cut some of the corn to make a fence row and dug a few post holes. They returned the next day to again work on the fence when they were interrupted by the defendants, Martin and John Steckdaub, and a brother, Frank Steckdaub, who came to the land with two shot guns and a revolver. With these weapons they drove the negroes off and presented the fire arms to plaintiff, telling plaintiff that he should not put his foot on the land and should not have an ear of the corn. Evidently believing that discretion was the better part of valor, plaintiff, together with his help, retired from the land. In October, 1918, while the corn was standing on the ground unharvested this suit was filed to replevin the corn. The corn, consisting of 688 bushels, was afterwards gathered by defendant and removed to the farther's place. There was testimony that it was worth from $1.50 to $1.90 per bushel. The jury returned a verdict and judgment in favor of plaintiff in the sum of $709.

Defendants insist that even though their possession of the land was wrongful that they were entitled to the possession of the crop, as the same was matured at the time Harriett McQuitty was put in possession of the land. There is no merit in this contention. Crops planted

by an intruder, so long as they remain on the land un-severed, are the property of the owner of the land. [Baker v. McInturff, 49 Mo. App. 505; Davis Bros. v. Callahan, 66 Mo. App. 168, 173.] Defendants are in no better position than an intruder would be. [Davis Bros. v. Callahan, supra.] The cases of Adams v. Leip, 71 Mo. 597, Edwards v. Eveler, 84 Mo. App. 405, and Johnson v. Cook, 96 Mo. App. 442, cited by the defendants, are not in point. In the first case the crop was harvested and severed from the land; in the second case, the title to the land, was acquired after the crops were planted; in the third case, it was held that the rights of a tenant who has sown his annual crop are superior to the judgment or execution creditor who had an unforeclosed lien on the land at the time of the sowing. The court at page 447 of the Johnson case distinguishes that case from one where the land is foreclosed under a deed of trust, pointing out that as between a tenant who is in possession of mortgaged property and the purchaser at a foreclosure sale, the latter is entitled to the crops. This was the rule prior to the enactment of section 2841, Revised Statutes 1909, which changed the rule. While the principle has been changed in reference to tenant of mortgaged prop-erty, no statute has been enacted in this State chang-ing it as to tenants who plant crops under a landlord who has no title or as to the landlord himself.

It is contended that even though the defendant D. C. Steckdaub is not entitled to his part of the crop that his sons, who were his tenants, are entitled to their share, for the reason that in the interests of agriculture a ten-ant who leases land from the apparent owner of the land is in titled to the assurance the his crop will not be taken from him. It is well established that tenants are in no better position than a landlord in a situation of this kind. [McGinnis v. Fernandes, 135 Ill. 69; 8 R. C. L. p. 367; Oyster v. Oyster, 32 Mo. App. 270; Salmon v. Fewell, 17 Mo. App. 118.] The sons in this case apparently were mere croppers (Morrill v. Alexander, 215 S. W.

764), and their rights could not be any greater than those of a tenant.

It is claimed that because there was no affidavit, bond or seizure of the property by the sheriff before judgment, that no judgment in replevin could have been rendered. Under section 2637, Revised Statute, 1909, suit for replevin in the circuit court may be brought by merely filing a petition without affidavit or bond and the case may proceed to judgment without taking the property. [White v. Grace, 192 Mo. App. 610, 612.] The case of Heager v. Marcus, 5 Mo. App. 565, cited by defendants, originated in a justice court. It is insisted that a standing unharvested crop is not subject to replevin. There is nothing in this contention. Growing crops are subject to replevin without regard as to whether they are growing, or having matured, have ceased to derive any nutriment from the soil. [Garth v. Caldwell, 72 Mo. 622; Baker v. McInturff, supra; Salmon v. Fewell, supra.] The case of Jones v. Dodge, 61 Mo. 368, cited by defendants, is not in point. There, only one of the owners of the 450 bushels of corn was sued. He owned but one-third of the corn and no division of the crop was practicable.

It is insisted that although Harriett McQuitty was put in possession of the property, that on the occasion of the exhibition of the fire arms plaintiff was ousted and as the crop at the time this suit was filed was on land in adverse possession of others, replevin would not lie. "The fact that the defendant in ejectment re-enters after having been dispossessed, and harvests the crop that was growing at the time he was ejected, does not affect the plaintiff's title to it." [8 R. C. L., pp. 367, 368.]

It is claimed that as Harriett McQuitty obtained a judgment for the rents and profits until restitution of the land and that the rents were paid by the defendant D. C. Steckbaud to the sheriff up to the date of the restitution of the land to Harriett McQuitty, that plaintiff is not entitled to recover the corn as there cannot be a recovery of both rents and the crop that was raised

during the season for which rent was paid. Harriett McQuitty's attorney refused to take the rent from the time of the planting of the crop until the date of the restitution, but defendants urge this would make no difference, for the reason that having once elected by the judgment to take the rents, she could not afterwards change her mind when she found a valuable corn crop on the premises.

Defendants seem to base their contention upon the theory that plaintiff's grantor having asked and secured judgment for rents placed herself in the position of a quasi landlord to defendant D. C. Steckdaub and having, in effect, rented the property to said defendant she could not take the corn raised on the land by him. The relationship between the plaintiff and defendant in ejectment is the very antithesis of that existing between landlord and tenant. Under our statute (Sec. 2394, R. S. 1909) the rents are recovered as damages for the wrongful occupancy. The relationship between Harriett McQuitty and D. C. Steckdaub cannot be likened in any respect to that of landlord and tenant.

However, it is held in the case of Gardner v. Kersey, 39 Ga. 664, that by reason of a statute in that State allowing the recovery of rents as mesne profits in ejectment (apparently a statute similar to ours, section 2394, Revised Statutes 1909) that the plaintiff in ejectment cannot recover both the crop and the rents for the current year. The English rule that the growing crops at the time of restitution in ejectment goes to the plaintiff for the reason that it is a part of the realty, is apparently the law in this State. [Hayden v. Burkemper, 101 Mo. 644, 647; 21 Am. Cases 431 (note); Davis Bros. v. Callahan, supra.] The unsuccessful defendant in ejectment is regraded as no more than a trespasser, and when plaintiff is put in possession of the land defendant is regarded as having no greater rights than that of a vacating trespasser. In other words, he has no right whatever in the land or the crop. The ownership of the crop and the right of possession is conclusively in the

plaintiff. [Oyster v. Oyster, supra; Davis Bros. v. Callahan, supra; 8 R. C. L. 367.] For these reasons the rule may not be the same in this State as it is in Georgia and it may be that in this State the plaintiff in eject- ment may recover damages (rents) for the current year and thereafter recover the crop. However, the Georgia rule is one that appeals to one's sense of fairness and right. But even under the Georgia rule the plaintiff in ejectment is entitled to his election to take the rents or the crops, and we think that neither Harriett McQuitty nor plaintiff ever elected to take the rents. As before stated, Harriett McQuitty refused to take the rents for the current season at which the crop of corn was raised. She did not elect to take the rents when she ob- tained her judgment in ejectment as this was rendered on June 21, 1817, long before the crop was put in and at a time when she did not know that any crop would be planted. In order for there to be an election between two remedies the party must have had knowledge of the facts from which the coexisting inconsistent remedial rights arise. [15 Cyc. 261; Louisville & Nashville Rd. Co. v. Bernheim, Bauer & Co.; 113 Ala. 489; White v. Beal and Fletcher, 64 S. W. 886 (Ark.); Wells Fargo & Co. v. Robinson, 13 Cal. 133; Garrett v. Farwell Co., 199 Ill. 436; Hays v. Midas, 104 N. Y. 602.] It is quite apparent that there was never any election on the part of Harriett McQuitty to take the rents for the season at which the corn crop was raised.

The point in plaintiff's appeal is that defendant D. C. Steckdaub testified that there were 688 bushels of corn raised and that it was worth at least $1.50 per bushel. Plaintiff's witnesses placed the value as high as $1.90 per bushel. Plaintiff urges that under said defend- ant's admission plaintiff was entitled to a verdict of $1032, and as the verdict was for only $709, that the judgment should be reversed and the cause remanded with directions to the trial court to enter judgment for the sum of $1032. Plaintiff, in support of his contention that we have power to do this, cites cases holding that

where there is a cause of action upon an admitted contract and the evidence fails to disclose any valid defense to such contract then judgment may be directed for the plaintiff as per the terms of the contract. That is not the situation here. Plaintiff cites no case holding that an appellate court can direct a judgment in the face of finding of the jury in a case involving an unliquidated amount. We know of no case that would permit us to take such a step. Plaintiff states in his brief that if his point is ruled against him that he does not want the case remanded but desires that the judgment be affirmed.

The judgment is affirmed. All concur.