UNION BANK OF QUINCY, Respondent, *v.* D. G. TUTT ET AL., Appellants.

February 26, 1878.

1. The relation between a bank and its depositor on current account is that of debtor and creditor. When payment upon a discount by the bank to a depositor creates an indebtedness on the part of the latter, all the funds which the bank has to his credit may be applied upon such indebtedness until it is fully discharged.

2. The payee of a draft deposited the same for discount at a bank of which he was a regular depositing customer, and received credit for the proceeds. At maturity the draft was dishonored, and the payee was charged with the amount due thereon, and received notice thereof from the bank. At the time of the dishonor, the payee had on deposit to his credit in the bank a sum larger than the amount due on the draft. The payee returned the draft to the bank, with the request that it bring suit thereon in its own name against the acceptors; which the bank did, after crediting the payee by the draft. *Held,* that the draft was received by the bank after dishonor, or that it was acting as the payee's agent, and that, in either case, the acceptors were entitled to inquire into the consideration between the payee and themselves.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

A. W. SLAYBACK, for appellants : The party holding the legal title of the instrument may sue on it, though he be an agent or trustee, and liable to account to another for the proceeds of the recovery ; but he is open, in such case, to

any defence which may exist against the person beneficially interested. — *Cottle* v. *Cole*, 20 Iowa, 481 ; Miller's Pl. & Pr. 23, and cases cited ; *Eaton* v. *Alger*, 57 Barb. 179. A payee will not be allowed to get rid of a defence of want of consideration by transferring a share of the obligation to another. — *Sexton et al.* v. *Dodge et al.*, 57 Barb. 116. The petition had to state the transfer and aver the indorsement,, and the delivery to plaintiff for value, or it would have been insufficient, as failing to state a cause of action. — *Dyer* v. *Krayer*, 37 Mo. 603. The surety is entitled to the benefit of all the securities which the principal debtor gives to the creditor. — *Sevier et al.* v. *Roddy*, 51 Mo. 582 ; *McCune* v. *Belt*, 38 Mo. 281. No matter what may be the form of a promissory note or bill of exchange, as between the original parties all the equities may be inquired into. — Story on Bills, 2d ed., 217, chap. 6, secs. 184–187. A holder who took the note after it became due, is open to any defence which could have been made against the party from whom he took it. — Pars. on Merc. Law, 101, sec. 5.

JOSEPH DICKSON, for respondent : The indorsee of negotiable paper for value, before maturity, is presumed to be an innocent holder, and must be so treated, in the absence of proof to the contrary ; and without such proof no evidence is admissible to impeach the consideration. — *Corby's Executrix* v. *Butler*, 55 Mo. 398 ; *Greer* v. *Yosti*, 56 Mo. 307 ; *Bennett* v. *Torlina*, 56 Mo. 309 : *Merrick* v. *Phillips*, 58 Mo. 436 ; *Collins* v. *Gilbert*, 4 U. S. 455. A negotiable note in the hands of an innocent purchaser for value before maturity, is protected from all inquiry into the consideration, unless there are circumstances connected with the transfer amounting to either actual notice, to the purchaser, of fraud, illegality, or failure of consideration, or to such a combination of suspicious circumstances as would, in legal contemplation, afford ground for the presumption that the purchaser was aware, at the time of its acquisition, of some equity between the original parties thereto which would

have prevented its purchase by him. — *Horton* v. *Payne*, 52 Mo. 531 ; *Hamilton* v. *Marks*, 63 Mo. 167.

LEWIS, P. J., delivered the opinion of the court.

This is a suit on a bill of exchange drawn by W. B. Sprinkle on defendants, and accepted by them, in favor of the Lewis County Savings-Bank, for $1,000, dated April 24, 1876, payable at ninety days, and indorsed to the plaintiff. The answer denies that the bill was transferred to plaintiff for value before maturity, and sets up an affirmative defence, substantially as follows : That defendants, with the knowledge of the payee, accepted the bill only as sureties for the drawer, and under conditions expressly agreed upon between the acceptors and the payee, to the following effect, viz. : that, defendants having indorsed and delivered to the payee a certain warehouse-receipt for property worth $2,600, stored in the warehouse of the drawer, the payee would look first to said warehouse-receipt and property for payment of the bill ; that the payee, nevertheless, in violation of said agreement, knowingly, without the knowledge or consent of defendants, permitted the drawer to " remove, ship out, and dispose of the property covered by said warehouse-receipt," whereby defendants were released from all liability upon said acceptance and suretyship ; that defendants immediately notified the payee of their claim to be released, whereupon the payee, after the maturity of the bill, made a collusive and fraudulent transfer thereof to the plaintiff, which had full notice of its dishonor ; that said transfer was made without valuable consideration, and for the mere purpose of depriving defendants of their rightful defence against an apparently innocent holder without notice. These allegations were put in issue by a reply.

At the trial, before a jury, the testimony tended to show that the payee in the bill sued on, the Lewis County Savings-Bank, located at Canton, Missouri, was a depositing customer of the plaintiff, a banking corporation in Quincy,

Illinois; that the bill was discounted before maturity, in the regular course of business, by the plaintiff, and the proceeds were entered on plaintiff's books to the credit of the payee on current account. The plaintiff sent the bill for collection to the Valley National Bank, in St. Louis, where, upon its maturity, it was duly protested for non-payment, and was then returned to the plaintiff. Plaintiff thereupon charged the amount due on the bill against the payee, in its current account, and transmitted the bill to the payee, with notice of the entry. The payee returned the bill, requesting the plaintiff to sue upon it, and promising to hold the plaintiff harmless as to additional expenses thus accruing. The plaintiff then made another entry in its books, crediting the payee by the bill, and proceeded to institute this suit.

At the trial, the defendants offered to prove the failure of consideration between the original parties to the bill, as alleged in the answer, but the court refused to admit any testimony on that subject. The following instruction was given : —

" The jury are instructed that the plaintiff, under the evidence, is entitled to recover the amount of the draft sued on, together with interest from its maturity at six per cent per annum, and four per cent damages on the face of the draft."

If the plaintiff's ownership and right of action at the commencement of this suit related back to its acquisition of the bill before maturity, then, assuming the absence of any testimony showing fraud or collusion between the plaintiff and its indorser, in prejudice of defendants' rights, the action of the Circuit Court was not erroneous. But if, the plaintiff's original ownership of the bill having ceased, a new ownership was initiated after the bill's dishonor; or if there was no new ownership, but only an agency for the indorser in the institution of the suit, then the defendants were entitled to establish, if they could, the defence set up in their answer, and the court committed error in excluding it.

from the jury. Whether, upon the undisputed facts, there was such a determination and subsequent renewal of owner-ship in the plaintiff, must depend upon the legal relations between a banker and a current depositor, and their respec-tive rights.

In the case of *Knecht* v. *United States Savings Institution*, 2 Mo. App. 563, we had occasion to examine these relations, and found them, by all controlling authority, to be simply those of debtor and creditor. We held, therefore, that where a bank held a note against a depositor, at the time of his death, which was larger in amount than the sum on deposit, the bank might credit the amount of the deposit on the note, and obtain an allowance in the Probate Court for the balance due; and that such credit and allowance were conclusive against an action by the administrator to recover the money on deposit. The law is well settled that, when payment upon an overdraft, a discount, an acceptance, or other species of advance or loan by the bank to a depositor, creates an indebtedness on his part, all the funds which the bank has to his credit may be applied upon such indebted-ness, until it is fully discharged. In *Commercial Bank* v. *Hughes*, 17 Wend. 94, the rule was enforced against the drawer of a bill of exchange held by the bank. In *Beckwith* v. *Union Bank*, 4 Sandf. 604, it was not enforced against an indorser of a bill discounted by the bank, only because the bill had not yet matured. Many cases might be cited showing the application of the rule to every form of indebt-edness from the depositor to the bank. *Marsh* v. *Oneida Central Bank*, 34 Barb. 298, and cases cited.

It appeared from the testimony in the present case that when the protested bill was returned to the plaintiff from St. Louis, the indorser, the Lewis County Savings-Bank, had on deposit with the plaintiff a sum larger than the amount due on the bill. The plaintiff at once exercised its right to appropriate from the deposit a sum sufficient to dis-charge the indebtedness of its depositor as indorser of a

dishonored bill.   It did so by an entry on its books, which was all that the case required.   It then transmitted to the indorser the bill, which was thus paid and satisfied, so far as the plaintiff was concerned, and of which, therefore, the plaintiff was no longer the proper owner.   The indorser's consent was immaterial.   The transaction was closed by the party who had an absolute right to close it.   When, therefore, the bill was again sent by the indorser to the plaintiff, this was a new transaction, begun and consummated after dishonor.   Whether the plaintiff then became a purchaser, or only an agent of the payee in enforcing collection by suit, is of no consequence.   In either event, the defendants were entitled to an inquiry into the consideration, as between themselves and the payee.

All the judges concurring, the judgment is reversed and the cause remanded.