# Louisville & Nashville Railroad Co. v. Bernheim, Bauer & Co.

*Action against Common Carrier for Failure to Deliver Shipment.*

1. *Action against common carrier for loss of goods shipped over its line; estoppel.*—In an action against a common carrier for goods lost in shipment, it appeared that the consignor, in an action to which the carrier was not a party, had unsuccessfully sued the consignee for the price, claiming that title passed by delivery to the carrier. The consignor had an imperfect knowledge of the facts, the sale having been made by an agent. *Held:* that the consignor was not estopped from suing the carrier for the goods.

2. *Same; same.*—In such an action, the suit against the consignee was an admission to be considered with the other facts of the case as to the issue of the ownership of the goods.

3. *Same; what is proper place of delivery.*—Where goods shipped are consigned to a point which is not on a railroad but near it, what is the proper place of delivery by the carrier is a question for the jury, there being conflict in the evidence.

4. *New trial; when motion therefor properly overruled.*—A motion for a new trial, made by the defendant upon the ground that the verdict was contrary to the evidence and contrary to the law, is properly overruled when it is shown that the evidence in the case was directly conflicting on an issue of fact involved, upon which issue the jury found for the plaintiff.

Appeal from the Circuit Court of Escambia.

Tried before the Hon. John R. Tyson.

The appellees, Bernheim, Bauer & Co., brought the present action against the appellant, the Louisville & Nashville Railroad Company, to recover damages for the failure of the defendant to deliver a case of clothing shipped by the plaintiff to one Hughes; the said clothing never having been delivered to consignee by the defendant.

There were two issues presented by the pleadings. First, the defendant denied plaintiffs' right to sue, alleging that plaintiffs did not have title to the goods, and no right to their possession; and second, the defendants contended that the goods were properly carried to Evergreen, Alabama, and that the failure of consignee to call for them relieved the defendant from liability as a common carrier and rendered it liable only as a warehouseman, in which capacity it is not sued in this action.

The bill of lading in this case was issued by the Ocean Steamship Co., in New York, on July 31, 1889. Among other things, it contains a stipulation that the liability of each carrier shall be terminated by a proper delivery of the goods to the next succeeding connecting carrier, and also, another stipulation that the last carrier shall deliver the goods at its station or wharf *nearest the ultimate point of destination*. It is admitted by the defendant that it received the goods in good order at River Junction, Fla., from the S., F. & W. Railroad, a common carrier connecting with it at that point, early in the month of August, 1889, and that it carried the goods to Evergreen, Ala., where they were burned in its depot on the night of October 9, 1889. Defendant notified the consignee of the arrival of the goods, such notice being given by mail, and consignee replied by mail that he had not ordered any goods shipped to Evergreen, and would not receive them there, but that if defendant would carry them to Crestview, Fla., a point on defendant's railroad, he would receive them. Defendant denied receiving this letter from consignee. Defendant admitted that it received the goods as a common carrier to be transported and delivered by it under all the terms, conditions and stipulations of the original bill of lading issued by the steamship company. The original bill of lading was lost, and by agreement, a blank form of a

bill of lading was introduced to show all the terms of the contract, it being admitted that the original bill of lading was in the same form, with the blanks filled in so as to show the shipment of the case of clothing by plaintiff to J. E. Hughes from New York to Lakeview, Ala., on July 30th, 1889. The markings on the case as shown by said bill of lading were not agreed upon, but as to this part of the said bill of lading, it was agreed that it should be left to the proof to show. Samuel S. Levor, the shipping clerk for plaintiff, under whose supervision the goods were packed and shipped, testified that the case was marked, "J. E. Hughes, Lakeview, Ala., Savannah Line, via. Crestview, Fla.;" and defendant's agent at Evergreen, Ala., testified that he did not remember distinctly, but to the best of his recollection, it was marked "J. E. Hughes, Lakeview, Ala."

J. E. Hughes, the consignee, testified that he bought the goods in question from one Prolsdorfer, a travelling salesman for plaintiff, some time in July, 1889. That his agreement with Prolsdorfer when he purchased the goods, was that they were not to become the property of Hughes, or be paid for by him, until they had been delivered at defendant's depot at Crestview, Fla., and that the goods had never been so delivered. It was admitted by the plaintiffs that if Prolsdorfer was present he would swear that the goods were simply ordered by Hughes and nothing said about the delivery of the goods, and that according to his understanding they were to become the property of Hughes when delivered to the common carrier in New York. The value of the goods was duly proved.

It was further shown that subsequent to October, 1889, and prior to the fall of 1893, plaintiffs brought a suit against Hughes in the circuit court of Covington county, Ala., for the agreed price of this case of clothing. That said suit was defended by Hughes on the ground that the goods were not to become his property, or be paid for by him, until delivered at Crestview, Fla. That it was tried at the Fall term, 1893, of said court, and resulted in a judgment against plaintiffs and in favor of said Hughes. That said Hughes had never communicated to plaintiffs the fact of his special contract with Prolsdorfer, and so far as he knew, plaintiffs knew nothing of it until it came out in the testimony adduced

by said Hughes in the trial of said cause in the circuit court of Covington county.

It was shown that the goods in question were shipped by plaintiffs, who were wholesale clothing merchants in New York, to Hughes, on an order sent in by Prols-dorfer, the travelling salesman of plaintiffs, which order was simply a letter from Prolsdorfer directing that the goods be shipped to Hughes.

It was shown without conflict or contradiction that Lakeview, Ala., is not on any line of any common carrier; that it is and was during all of the year 1889, sixty-seven miles distant from Evergreen, Ala., a point on defendant's line of railroad, and twenty-six miles distant from Crestview, Fla., another point on defendant's line of railroad; that Crestview, Fla., is and always has been the nearest railway station to Lakeview, Ala., and the regular shipping point for Lakeview, Ala., and that Evergreen, Ala., has never been such shipping point; that witness Hughes has been in the mercantile business for many years at Lakeview, Ala., and that all his goods have always been shipped over defendant's line of railroad and delivered to him at Crestview, Fla.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that if they believe the evidence, they must find for the defendant." (2.) "The court charges the jury that the contract which is the bill of lading, was made in New York between these plaintiffs and the steamship company, and if you believe from the evidence that the direction was to ship to Lakeview, Ala., then the official guide introduced in evidence was the criterion to govern the parties to the contract, and if said guide shows Evergreen, Ala., as the proper place to which said goods should be delivered, then the railroad performed its duty in carrying the goods to Evergreen, Ala., and the plaintiffs can not in that count recover."

There were verdict and judgment for $460. At a subsequent day of the term the defendant made a motion for a new trial on the grounds that the verdict of the jury was contrary to the law and the evidence in the case, and because "The verdict was contrary to the law, because the suit was for failure to deliver the goods at

Lakeview, Ala., a point not on the railroad, and the undisputed proof shows that they were delivered at Evergreen, Ala., a place at which by the contract of affreightment they were to be delivered."

This motion was overruled, and the defendant duly excepted. The defendant appeals and assigns as error the refusal of the court to give the 1st and 2d charges asked by it, and the overruling by the court of its motion for a new trial.

THOS. G. JONES, for appellant.—The suit of *Bernheim & Co. v. Hughes* was an admission of record by them that the property here sued for was not their property, and it was an election by them with full knowledge of all the facts, to treat the property as Hughes' property, and to sue him for the price of the goods. Having sued. Hughes for the *price* of the goods, they can not now turn around and sue the defendant for not delivering them. That involves the contradictory assertion that they were not sold. The two remedies are inconsistent. Bishop on Contracts, Section 808. The election once made can not be retracted. Bernheim, Bauer & Co. could not at one and the same time, be clothed with title, and sue Hughes for the price, because they had been sold and delivered to him, and at the same time be the owners of the goods, and sue the railroad for not delivering them. *Fowler v. Bowery Savings Bank*, 4 Lawyers' Reports Annotated, 145 ; *Conrow v. Little*, 115 N. Y. 387 ; *Bradley v. Brigham*, 149 Mass. 141.

RABB & STEVENS and PILLANS, TORREY & HANAW, *contra.*—We do not understand appellant as denying the right of a consignor to sue the common carrier for a failure to deliver goods where the consignor has title to or retains any interest in the goods, and in fact the pleadings in this case do not raise such an issue. But if this question is raised, the following authorities conclusively show that consignor may maintain the suit. 2 Amer. & Eng. Encyc. of Law, page 902 ; *L. & N. R. R. Co. v. Wood*, 72 Ala. 451 ; *M. & G. R. R. Co. v. Williams*, 64 Ala. 168 ; *Southern Ex. Co. v. Armstead*, 50 Ala. 350 ; *L. & N. R. R. Co. v. Touart*, 97 Ala. 514 : Hutchinson on Carriers, (2 ed.), Sec. 134.

McCLELLAN, J.—The fact that Bernheim, Bauer & Co. insisted that the goods, which the railroad, it is alleged, failed to deliver, became the property of Hughes on their delivery to the carrier at New York, and brought an action against Hughes for the price on that theory, is certainly not conclusive against the title they now assert to the property. Their understanding of the terms of the sale arising, perhaps, from the fact that it was their rule and custom to make sale f. o. b. at New York, though they sometimes sold for delivery at the point of destination, or, it may be, from the report or order of their travelling salesman, Prolsdorfer, was that the goods became the property of Hughes as soon as they passed into the possession of the carriers; and this was also Prolsdorfer's understanding of it. Upon this they sued Hughes for the price, and on the trial of that case Hughes testified the one way and Prolsdorfer the other, the jury found for Hughes, and there was judgment accordingly. It is shown in this case that the sellers had no notice of Hughes' version of the transaction until he advanced it in evidence at the trial as a defense to their action against him. The present defendant was a stranger to that suit and is not helped or hindered in the present action by the result of it, nor by the fact that Bernheim, Bauer & Co. proceeded against Hughes for the price of the goods, except that it constitutes an inconclusive admission on their part that the property did not belong to them. That suit can not amount to an efficacious and binding election by them in this case, for the reason that they were not acquainted with all the facts when they instituted it: they did not know that Hughes claimed that the goods were not to become his property until delivered to him at the point of destination, and for the further reason that the present defendant was not within the operation of any election they may have then made. It was not an estoppel upon them to maintain this suit, because the defendant was a stranger to that suit and could not have been affected by the result of it: it lacked the mutuality essential to estoppel. Treating their conduct in prosecuting that suit as a mere admission that the goods did not belong to them, we have on one side of that issue this admission, made upon an imperfect knowledge of the facts, and the testimony of Prolsdorfer, and on the other the

[Louisville & Nashville R. R. Co. v. Bernheim, Bauer & Co.]

testimony of Hughes. The jury had a right to find in line with this admission of the plaintiffs and the testimony of Prolsdorfer to the effect that title to the consignment passed into Hughes by the terms of the sale when the goods were delivered to the carrier at New York, or to believe the positive testimony of Hughes to the effect that by the terms of the sale the goods were to become his property only upon their arrival at the terminal point of the shipment; and it would do violence to the principles frequently declared by this court in respect of applications for new trials, to hold that a verdict either way upon this evidence should be disturbed for want of support in the evidence.—*Cobb v. Malone*, 92 Ala. 630.

The other issue in the case, viz., whether the shipment was to Evergreen, Ala., or Crestview, Fla., likewise stood upon conflicting evidence of such character as that the jury would have been fully justified in determining it either for the plaintiffs or the defendant, and their finding for the plaintiffs is not open to assault on a motion for a new trial.

The evidence of witnesses on the trial tended to show that Crestview, Fla., and not Evergreen, Ala., was the shipping point for Lakeview, Ala., and the proper place for shipments for the latter place to be carried and delivered. If the jury found the fact in line with this tendency of the evidence, they should not have found that the railroad company performed its duty in carrying the goods to Evergreen even though the guide referred to in charge 2, designated that place as the railway destination of shipments to Lakeview. The carrier insures delivery at the proper place unless prevented by the act of God or the public enemy, and he and not the shipper must suffer from the mistakes of his agents, or of guide books upon which he relies, as to what is the proper place of delivery. Said charge—as also charge 1, on considerations already adverted to—was, therefore, properly refused.

Affirmed.