HORIGAN REALTY COMPANY, RESPONDENT, v. FIRST NATIONAL BANK, APPELLANT.*

Kansas City Court of Appeals. May 25, 1925.

330

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 694, n. 98; Banks and Banking, 7CJ, p. 639, n. 78; p. 642, n. 2; p. 655, n. 87; p. 659, n. 27; p. 661, n. 43; Election of Remedies, 20CJ, p. 23, n. 46, section 28, p. 35, n. 24, 30; p. 37, n. 39; Estoppel, 21CJ, p. 1242, n. 92; p. 1250, n. 79; Evidence, 22CJ, section 374, p. 335, n. 38; Trial, 38Cyc, p. 1516, n. 56; Trusts, 39Cyc, p. 528, n. 62; p. 540 n. 37; p. 542, n. 49.

*Randolph & Randolph* for respondent.

*Culver, Phillip & Voorhees* for appellant.

ARNOLD, J.—This is an action to recover the sum of $2808.12 alleged to belong to a trust fund of plaintiff in the possession of defendant. The cause was tried to the court without the aid of a jury upon an agreed statement of facts which shows that John J. Flynn, for many years a resident of St. Joseph, Mo., was plaintiff's secretary and treasurer, the corporation having been founded for the purpose of handling property belonging to the Estate of Alice Horigan. The stockholders were her children, viz., J. J. Horigan, Mrs. C. H. Quentin, Mrs. T. P. Holland; and her grandchildren, Alice and Frank Flynn, children of the deceased wife of John J. Flynn who was a daughter of Alice Horigan.

In the month of March, 1920, a piece of real estate in the city of St. Joseph belonging to plaintiff was sold and conveyed to Abraham Winter and wife for a consideration of $6000, of which $1000 was paid in cash and $5000 in negotiable liberty bonds of the United States, payable to bearer, as follows: $1000 second liberty loan, $2000

third liberty loan and $2000 fourth liberty loan. The proceeds of the sale were received by John J. Flynn as secretary and treasurer of the Horigan Realty Company, and on March 30, 1920, said Flynn requested Frazer L. Ford, president of defendant bank, to sell bonds for him on that day's quotations and to deposit the proceeds thereof to Flynn's personal account in defendant bank. No disclosure was made by plaintiff with reference to their ownership, nor did Mr. Ford then know that any of the bonds were not the property of John J. Flynn. The said Frazer L. Ford was a member of the firm of Ford & Porter, bond brokers, by whom the bonds were purchased.

The proceeds of the sale amounted to $4552.30, and on March 30, 1920, this amount was deposited by Ford to the credit of John J. Flynn in the defendant bank where at that time and for a long time prior thereto, said Flynn had a personal account.

Attached to and made a part of the agreed statement of facts was a statement showing deposits, withdrawals and daily balances of Flynn's personal account from January 22, 1920, to April 23, 1921. On April 6, 1921, John J. Flynn died intestate. On the day of his death there was a balance to his credit in said account of $2808.12 and this sum stood to his credit on the books of the bank until April 21, 1921, on which date the account of Flynn was charged with said balance by defendant bank and credited upon a certain note hereinafter mentioned.

Prior to the 6th day of April, 1921, defendant held six notes, each for the sum of $10,000, all being of the same tenor and effect, excepting their dates and maturities. The note upon which said sum of $2808.12 was credited is as follows:

"$10,000                   St. Joseph, Mo., January 13, 1921.
"Ninety days after date, we as principals, promise to pay to the order of the First National Bank of St. Joseph, ten thousand dollars, for value received at the office of said bank in St. Joseph, Missouri, with interest at the rate of eight per cent annum after maturity. Each of the makers hereof and the endorsers hereon waive demand, notice and protest on this note. If this note is not paid at maturity, and the same is placed in the hands of an attorney for collection, we agree to pay an additional sum of ten per cent of the amount then due as an attorney's fee."

The said note was signed "Horigan Supply Company by John J. Flynn," and on the back was the following endorsement: "Horigan Supply Company by John J. Flynn, President. John J. Flynn."

The other five notes, each for the sum of $10,000 were dated respectively as follows: Jan. 19, 1921, Jan. 27, 1921, Feb. 3, 1921, Feb. 20, 1921 and Feb. 26, 1921, each payable in ninety days from date. Flynn was not indebted to defendant in any other amount, nor in any other

manner. The said notes were rediscounted with the Federal Reserve Bank of Kansas City, Mo., and bore the following indorsement:

"Demand, notice and protest waived, payment guaranteed.

"First National Bank, St. Joseph, Mo.

"By F. L. Ford, President."

The note dated January 13, 1921 was returned to defendant April 13, 1921; the others were returned April 15th and again became the property of defendant bank.

At this point it is well to note that the maker of these notes, i. e. the Horigan Supply Company of which John J. Flynn was president, was an entirely separate and distinct concern from the Horigan Realty Company, plaintiff herein. The Horigan Supply Company, incorporated in 1917, was engaged as a wholesale dealer in plumbers' supplies. The agreed statement of facts further shows that the books of the Horigan Realty Company did not disclose that the said bonds had been sold, but showed they were on hand and that the bonds sold, the proceeds of which were placed to the credit of John J. Flynn, were the identical bonds received by plaintiff in the sale of the real estate aforesaid.

On April 15, 1921, Frank Flynn was granted letters of administration on the estate of his father, John J. Flynn. The value of the estate collected was $21,534,56, and among the assets listed was $2808.12, cash in the hands of defendant. The inventory filed April 20, 1921, showed the total indebtedness of the estate, outside of the notes above mentioned, was $3201.15. Notes similar to those above described, payable to various individuals and corporations for the payment of which deceased had rendered himself liable, were probated against the estate and also were allowed against the bankrupt Estate of the Horigan Supply Company, amounting to the approximate sum of $260,000.

About April 19, 1921, the Horigan Supply Company was declared a bankrupt, with assets amounting to about twenty-five per cent of its indebtedness, including the same notes that were probated against the Estate of John J. Flynn. The Flynn estate had not been fully administered at the date of filing this suit, but since that time, final settlement therein has been made, the general creditors receiving .05109 per cent of their claims. Defendant herein proved its claim against the Estate of Flynn, and also proved its claim for the same notes against the bankrupt estate of the Horigan Supply Company.

During the week following the death of Flynn a meeting of the creditors of the Horigan Supply Company was held at the defendant bank, at which meeting Frazer L. Ford, the president of said bank, and Mr. Ben Phillip, its attorney, were present. A statement of the assets of the Horigan Realty Company was presented by T. P. Holland, who succeeded Flynn as secretary-treasurer thereof, showing the ownership in said company of $5000 in liberty bonds, and Holland stated that the bonds could not be found. On or about April 15, 1921,

on personal inquiry by Mr. Holland, Mr. Ford stated that he remembered nothing about the bonds in question. Mr. Holland made similar inquiry of Mr. Porter, a partner of Mr. Ford in the brokerage business. Mr. Porter stated that he recalled selling $1000 worth of bonds for O. H. Quentin but did not recall any transaction with John J. Flynn, but would look it up.

Again on April 21, 1921, Mr. Holland saw Mr. Ford at the bank and stated to him that he had not succeeded in locating the missing bonds and asked Ford to investigate and ascertain if the bank had handled the transaction. On the following day, Holland addressed a letter to Ford, care of the First National Bank, and therein stated that the books of the Horigan Realty Company showed ownership of $5000 in liberty bonds at the time a statement was rendered to the stockholders on February 1, 1921, but no disposition of them was shown. In this letter was incorporated the following clause:

''I would appreciate it very much, indeed, if you will kindly make an investigation for me and see whether or not Mr. J. J. Flynn, or anyone for him, sold those bonds to your bank, or had your bank handle them for him; and if so, kindly advise me what disposition was made of the funds received from the sale of those bonds or any part of them. The sale would have been between March 21, 1920, and April 1, 1921.''

Mr. Ford made an investigation and thereafter telephoned to Mr. Holland that the records of Ford & Porter showed that Flynn had sold through said firm $5000 worth of liberty bonds for $4552.30, and that the proceeds thereof had been deposited in the First National Bank to the personal account of Flynn. This conversation was confirmed by Ford & Porter by G. E. Porter of the firm, by letter dated April 25, 1921, enclosing duplicate statement of the transaction as of March 30, 1920.

Thereafter plaintiff herein instituted proceedings in the Buchanan county circuit court, against the administrator of the Flynn estate, to have declared a trust the amount realized from the sale of the bonds and entitled to priority of payment against other creditors. In that case it was shown that the amount sued for herein had not been recovered by the administrator, and the court so found in its decree, and that certain items in the total amount of $577.33 had been paid out for the preservation of the estate; and this amount was declared to have a priority and the balance was allowed as a general claim against the estate to be shared *pro rata* with general creditors. Upon this last item there was paid plaintiff herein the sum of $212.55.

The Horigan Realty Company was incorporated in 1904 and, as stated, the Horigan Supply Company was incorporated in 1917. None of the stockholders of the Horigan Realty Company owned any of the stock of the Horigan Supply Company, J. J. Horigan and Frank Flynn, the latter having only a small amount of the stock. John J.

Flynn was not a stockholder in the Realty Company, but held practically all the common stock in the Supply Company. He was secretary-treasurer because his wife had been a stockholder and his children had inherited shares of stock.

On May 17, 1921, T. P. Holland who had succeeded Flynn as secretary-treasurer of the Horigan Realty Company made demand on Frazer L. Ford for the balance of $2808.02 and Ford stated there was nothing to the credit of the account in the defendant bank. John J. Flynn had no authority from plaintiff to use or sell the said bonds or convert the property of plaintiff to his own use. A statement of the individual account of John J. Flynn with the defendant bank showed that the item of $2808.12 was charged against the same on April 23, 1922, and the account closed. The petition filed July 11, 1922, alleges the matters and things materially as set forth in the agreed statement of facts and prays to have the sum of $4552.30 declared a trust fund in favor of plaintiff and that the sum of $2808.12, then in the hands of defendant, be declared part of said trust fund and held in the bank for the benefit of plaintiff.

On October 4, 1922, the defendant filed answer in the nature of a general denial and on March 23, 1924, when the case was called for hearing, by leave of court, an amended answer was filed which embraced, first, a general denial and for further answer pleaded that defendant at the time the deposit in question was made, had no knowledge that the sum in question was not the individual property of John J. Flynn; that said Flynn deposited other money with defendant before and after the 30th day of March, 1920, and that Flynn, from time to time, checked against said account; that on September 20, 1920, said Flynn had withdrawn all money so deposited excepting $2637.64; that after said date Flynn continued to deposit with, and to draw from said money so deposited until on April 1, 1921, said Flynn had on deposit with defendant the sum of $2808.12; that on April 6, 1921, defendant held the six notes above described; that said notes were rediscounted; that the note due on April 13, 1921, was not paid by the Horigan Supply Company, but on said date was reassigned to defendant and thereafter defendant was the owner and holder thereof.

The answer also pleads the fact of the suit by plaintiff against the administrator of the Estate of John J. Flynn, and charges that by reason of the said suit and the adjudication thereof, as set out in the agreed statement of facts, plaintiff is now estopped and precluded to prosecute this suit to recover the alleged trust funds, or the proceeds of said trust property.

The answer further avers that the said John J. Flynn having died on April 6, 1921, and his estate being then hopelessly insolvent, defendant had the right to, and did, offset the balance owing by said estate, on deposit by said Flynn, to-wit, $2808.12, against the lia-

bility of said Flynn to defendant, upon the note dated January 13, 1921.

On April 21, 1924, plaintiff's motion previously filed, to strike out defendant's amended answer was overruled and it was ordered and adjudged by the court that plaintiff have and recover from defendant the sum of $2637.64, with costs. Motions for new trial and in arrest were unavailing and defendant appeals.

It is charged the court erred in holding that the fund which plaintiff seeks to recover was a trust fund in the hands of defendant. In its original brief, defendant stated its position in this respect as follows:

"It may be assumed for the sake of argument that the proceeds of the bonds constitute a trust fund in the hands of John J. Flynn that belongs to respondent. But it was not a trust fund in the hands of the appellant because at the time the appellant received the proceeds of the bonds and credited Flynn's account therewith, the bank had no knowledge that the money was not the property of Flynn.

"When Flynn deposited the money in the bank, and the bank received it without notice that the money did not belong to Flynn, the title to the money passed to the bank, and the bank became the debtor to Flynn."

That the relation between a bank and its depositors is one of debtor and creditor is well settled; and that when a deposit is made it becomes the fund of the bank and the deposit an ordinary indebtedness. And this is true even though the money is held by the depositor as a trustee, unless of course the bank had notice of the true ownership thereof. It is also the established rule that the bank may apply a customer's deposit to the payment of the latter's overdue note, although the money may belong to another, unless the bank has knowledge that the money does not so belong. [Sparrow v. Bank, 103 Mo. App. 338; Mayer v. Bank, 86 Mo. App. 108; Johnson v. Bank, 56 Mo. App. 257; Bank v. Bank, 102 Mo. App. 357.] In the instant case it is not disputed that defendant, at the time of the deposit, had no notice that the money deposited by Flynn was other than his own.

The record discloses that defendant, in fact, had no such notice until the communications between its president and Holland, after the death of Flynn; but there was notice that this money belonged to plaintiff prior to the time defendant attempted to charge the balance against Flynn's account by crediting the amount on the note. [Eyerman v. Bank, 13 Mo. App. 289; same case, 84 Mo. 408.]

The agreed statement of facts supports the conclusion that defendant knew of the death of Flynn which occurred on April 6, 1921, and that at that time defendant neither owned nor was in possession of the note in question, having rediscounted the same. True, the note again came into the ownership of defendant, but after notice had been re-

ceived by it of the character of the Flynn deposit. It is the law that the deposit of a deceased person may not be applied to a note that is not yet due. [Kortjohn v. Bank, 63 Mo. App. 166; Homer v. Bank, 140 Mo. 225.] It follows, therefore, that a deposit of a deceased person may not be applied to a note which the bank did not own at the time of the death of the depositor. It is also the rule that an account of a deceased person may not be applied to an account or note not yet due. [Padgett v. Bank, 141 Mo. App. 364, 380.]

During the life of Flynn the defendant had the right to offset one claim against the other, but Flynn's death closed the account as between him and the bank; and while the bank could strike the balance as of the date of Flynn's death and could credit any money then on deposit on any matured obligation it then held against him, it could not take into consideration any debts accruing after his death. [Knecht v. U. S. Savings Inst., 2 Mo. App. 563; Bank v. Tutt, 5 Mo. App. 346.] Under these rules we hold that defendant was without legal right to apply the balance to Flynn's deposit as a credit upon the note in question at the time such charge was made.

But it is urged by defendant that when the trust fund was mingled with Flynn's individual money in his account and various additional sums were added thereto and various amounts withdrawn therefrom, the balance remaining to his credit could not be recovered as a trust fund because there is no evidence to identify the plaintiff's money in that balance.

We think this contention is without merit. The general rule is that equity will follow a fund through any number of transactions and preserve it for its owner, so long as it can be identified, but if it cannot be identified, the fund cannot be recovered. [Tiernan's Exec. v. B. & L. Association, 152 Mo. 135; Phillips v. Overfield, 100 Mo. 466.] But we think the money received from the sale of the bonds and deposited by Flynn in the bank may be traced and located in the hands of the bank at the date of Flynn's death. Under like circumstances it has been held that the depositor must be considered to have drawn out his own money in preference to the trust fund. [National Bank v. Ins. Co., 104 U. S. 54, 68.] Applying this rule to the case at bar we must presume Flynn first withdrew his own money from the bank before taking out any which belonged to the trust fund; and that whatever deposits he made after depositing the trust fund were withdrawn before he drew upon the trust fund or any part thereof which remained at the time of the withdrawals. Judgment was rendered by the court for the least amount that Flynn had to his credit between the time of the deposit of the trust fund and the time of his death. Under the rules above referred to this was proper.

There is nothing in the case of Reynolds v. Bank, 225 S. W. 901, holding contrary to the rule just stated. In that case the evidence

shows that the bank never obtained information as to the trust character, if there was such, of that part of the deposit sued for until it had paid it out to the depositor. The case of Mayer v. Bank, 86 Mo. App. 422, decided by this court, is hereby overruled in so far as it is inconsistent with our holding in the case at bar.

This brings us to a consideration of the only remaining question presented by this appeal. It is defendant's position that plaintiff is estopped from making any claim of ownership of the trust fund because in a prior action plaintiff secured a judgment against the Estate of Flynn, and accepted a *pro rata* share of the estate, applicable to the payment of the general debts of the deceased. Also in suing the administrator of the Flynn Estate for the trust fund and accepting the share of the amount declared a trust fund in his hands, plaintiff cannot now recover the trust fund itself.

The rule is well settled that in order to establish an election of remedies the party must have had knowledge of the substantial facts in which the coexisting remedial rights arose. [Stephens v. Steckdaub, 202 Mo. App. 392, 398; 15 Cyc. 261; Railroad v. Bernheim Co., 113 Ala. 489; Hill v. Combs, 92 Mo. App. 242.] The doctrine of election is applicable only where the party is cognizant of all the material facts and then makes a free and deliberate choice of remedies. [Wells-Fargo & Co. v. Robinson, 13 Cal. 133; Commission Co. v. Railroad Co., 126 Mo. 344, 351.] It is the rule that if the suitor in his first action has mistaken his remedy and is defeated on that ground, or if an action is commenced in ignorance of the material facts which afford an alternative remedy, the knowledge of which is essential to an intelligent choice of procedure, the institution of such suit will not be held to constitute a waiver of any rights which would be inconsistent with the maintenance of such suit. [Garrett v. Farwell, 199 Ill. 436, 441.]

Estoppel is a special defense and to be available must be both pleaded and proved. It is insisted by plaintiff that estoppel is not available to defendant herein because not pleaded in the answer, but was pleaded in an amended answer filed over the objections of plaintiff after the agreed statement of facts had been filed, but before final judgment.

Plaintiff is not appealing and may not complain of the action of the court in this regard. In its brief plaintiff claims that it is not estopped for the reason that when it recovered in the other proceedings it was not aware of "the fact that the bank had no right to apply this money to the note; had no right to offset it because the note was not due and because the note was not owned by the bank at the date of the death of Mr. Flynn." On April 23rd, the bank charged Flynn's account with his indebtedness to it and thereafter reported that it had no money in Flynn's account. Now if the bank actually owned

an overdue debt of Flynn at his death, it had the right to apply Flynn's account to that indebtedness (Padgett v. Bank, 141 Mo. App. 374), in the absence of knowledge of the true character of the deposit. In order for plaintiff to have made an intelligent choice of remedies, it would seem that it should have known of the true facts quoted above from plaintiff's brief. While the burden was upon defendant to show facts giving rise to an election, the evidence as to whether plaintiff had knowledge of the facts (regardless of which party was possessed of those facts) was peculiarly within the possession of the plaintiff and the burden was upon it to show lack of such knowledge. [20 C. J. 37.] The agreed statement of facts is silent on this question, so plaintiff failed to meet the burden upon it and the judgment in its favor cannot stand. The judgment is reversed and the cause remanded. *Bland, J.,* concurs; *Trimble, P. J.,* absent.