NANCY A. EVANS, APPELLANT, v. C. E. FRENCH, STATE FINANCE COMMISSIONER, ETC., RESPONDENT.*

Kansas City Court of Appeals. May 21, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 1760, p. 142, n. 15; section 2579, p. 679, n. 37; Banks and Banking. 7CJ, section 305, p. 628, n. 94; section 527, p. 744, n. 90; section 544, p. 750, n. 60; section 548, p. 751, n. 78, 80; p. 752, n. 82; Contracts 13CJ, section 46, p. 263, n. 74; Trusts 39Cyc, p. 17, n. 3.

*Rober S. Miller* and *Scott J. Miller* for appellant.

*Davis & Ashby* for respondent.

FRANK, C.—Action by plaintiff asking that a preferred claim in the sum of $4000 be allowed in her favor and against the Peoples Bank of Meadville, now in the hands of the commissioner of finance of the State. The trial court denied a preference but allowed the claim in the sum of $4000 as a common or general claim, and plaintiff appealed.

The record shows that this bank was a corporation doing a general banking business in Meadville, Missouri, prior to September 15, 1925. Plaintiff had been a customer of this bank for a number of years, carrying a checking account therein. On account of her ad-

vanced age and infirmities, the cashier of said bank and her two sons transacted her banking business for her.

There is no dispute as to the facts giving rise to plaintiff's claim. Both parties concede that at various times before the closing of said bank, plaintiff, by means of checks drawn on her checking account in said bank, delivered to the cashier of said bank various sums of money aggregating $8000 and directed him to invest said money in government bonds for her; that said cashier did purchase registered bonds for her with the first $4000 she gave him, but with the remaining $4000, he, without her knowledge or consent purchased time certificates of deposit in said bank instead of investing the money in bonds as he had been directed to do.

The bank ceased to function as a bank on September 15, 1925, and on this date its affairs and business were placed in charge of the commissioner of finance of the State, and since said time has been in process of liquidation. After the bank closed bonds to the amount of $4000, which had been purchased with plaintiff's money, were delivered to her, and this suit was brought to establish a preferred claim against the assets of the bank in the hands of the commissioner of finance for the remaining $4000 of plaintiff's money which the cashier invested in time certificates of deposit, without her knowledge or consent, and against her directions.

Other necessary facts will be stated in connection with the points discussed.

Appellant contends that as the bank, through its cashier, received the $4000 for the specific purpose of investing it in government bonds, it was impressed with a trust in favor of plaintiff, while respondent contends that when the money was invested in certificates of deposit in said bank, the title to the money passed to the bank, and the relation of debtor and creditor arose between plaintiff and the bank.

Where money is placed on general deposit in a bank, either on check account or on time deposit, the title to the money passes to the bank and the relation of debtor and creditor is created between the bank and the depositor. [Butcher v. Butler, 134 Mo. App. 61, 91; Horigan Realty Co. v. First National Bank, 273 S. W. 772, 775; Ellington et al. v. Cantley et al., 300 S. W. 529, 530.] This rule, however, does not apply in this case because plaintiff did not deposit the $4000 in question in this bank, or authorize any one to do so for her. Plaintiff had a checking account in the bank. She delivered to the cashier two checks on this account for $2000 each, payable to bonds, and directed him to invest the proceeds of said checks in government bonds for her. The cashier charged these two checks to her account, thus withdrawing $4000 from said account. While it is true that the $4000 may not have actually passed into the phys-

ical possession of the cashier, yet the legal effect of charging these checks against plaintiff's account, under the circumstances here shown, was to place $4000 of plaintiff's money in the hands of the cashier with specific instructions from plaintiff to invest it in government bonds for her. The cashier violated his instructions by investing the money in time certificates of deposit in said bank, instead of investing it in government bonds as he was directed to do. The voluntary, wrongful and unauthorized act of the cashier in placing this money on time deposit and issuing certificates of deposit therefor, without the knowledge or consent of plaintiff, could not have the effect of forcing her to accept a relation with said bank that she never intended to create, or change the relation that was actually created at the time plaintiff delivered the checks to the cashier and directed him to invest their proceeds in government bonds. Relationships are created by the conduct or agreement of both parties and not by the voluntary act of one party without the knowledge or consent of the other. [Ellington et al. v. Cantley et al., supra; William R. Compton Co. et al. v. Farmers Trust Co. of Grant City et al., 279 S. W. 746, 749.] We, therefore, hold that the unauthorized act of the cashier in investing plaintiff's money in time certificates of deposit did not create the relation of debtor and creditor between plaintiff and the bank.

A trust has been defined to be "a holding of property, subject to a duty of employing it or applying its proceeds according to directions given by the person from whom it was derived." [39 Cyc. 17.] The Supreme Court of this State in Corby v. Corby, 85 Mo. —, defines a trust as follows, "A trust is a relation between two persons, by virtue of which one of them (the trustee) holds property for the benefit of the other (the cestui que trust)." The transactions had between plaintiff and the bank created a relation of trust and not of debtor and creditor. When the bank accepted the money from plaintiff with specific directions to invest it in government bonds, the title thereto did not pass, but the bank thereafter held the money in trust for plaintiff, subject to the duty of investing it in government bonds as directed by plaintiff.

Defendant contends that plaintiff did not bring suit to establish her claim within six months after the date of the rejection of the claim by the commissioner of finance in charge of the bank and for that reason plaintiff's claim is barred by limitations.

Section 11720. Revised Statutes 1919, provides that when the time within which the commissioner is required to approve or reject claims has expired, and at any time within six months thereafter, a claimant whose claim has been duly filed and has not been approved by the commissioner, may institute and maintain an action thereon against such corporation or banker.

The St. Louis Court of Appeals in Boserwick Mills & Power Co. v. Citizens Trust Co. of Gorin, 298 S. W. 1049, construed this statute to be one of limitation and held that where a claim against an insolvent bank has been rejected by the commissioner in charge of the bank, and no suit is brought on such rejected claim within the time specified in said statute, it is barred by limitation. We agree with this holding. It remains, therefore, for us to determine from the record whether or not the case at bar was brought within the time specified in said section.

Section 11716, Revised Statutes 1919, requires the commissioner of finance, after he takes charge of an insolvent bank and determines to liquidate its affairs to notify all persons who may have claims against such bank to present the same to him and make proof thereof within four months from the date of said notice. Section 11718, provides that any interested party may object to the allowance of any claim by filing verified written objections with the commissioner within thirty days after the last date fixed in the notice to creditors to present and make proof of their claims. Section 11719, provides that the commissioner shall, not later than thirty days after the time has expired to file objections to claims duly presented, approve or reject every duly filed claim except claims as to which objections are still pending and undetermined by the court or judge.

The record in this case shows that the commissioner of finance took charge of the bank in question and determined to liquidate its affairs on September 15, 1925. On September 24, 1925 the commissioner notified all persons having claims against said bank to present same for allowance or rejection within four months thereafter. Plaintiff filed her claim with the commissioner on January 22, 1926. The commissioner rejected her claim on March 5, 1926 and notified plaintiff of such rejection on March 6, 1926.

On April 6, 1926, the commissioner in charge of said bank, filed in the circuit court a written report of his approval and rejection of claims. On April 14, 1926, plaintiff filed a petition in the circuit court in which she was styled as plaintiff and the defendants here were named as defendants. This petition stated the facts giving rise to plaintiff's claim, excepted to the action of the commissioner in rejecting her claim, and asked that said claim, with interest, be allowed and paid in full as a preferred claim. On April 16, 1926, the court made and entered of record the following order:

"And on Monday, April 16th, being the 7th day of the February Adjourned Term, 1926, of said court, the report of said Special Deputy Finance Commissioner, David P. Janes, coming on to be heard and as a part thereof the preferred claim of Nancy A. Evans of Meadville, Missouri, for $6000 as set forth in said report not being ready for hearing is not considered by the court at this hearing

but the action of the court upon said claim is continued and the court especially reserves for future and further consideration, action upon said last-mentioned claim.''

On May 25, 1927, defendant filed answer to plaintiff's petition, and by agreement of parties, the cause was set for hearing at a later date, at which time the cause was tried and determined on the issues thus made.

Reference to the dates heretofore set out shows that plaintiff's petition was filed within six months after the time in which the commissioner in charge of the bank was required to approve or reject claims had expired. We do not understand that defendant disputes this fact. The contention is that plaintiff's petition was filed in the proceedings pending in the circuit court on the commissioner's report theretofore filed, and for that reason was not the institution of a suit on plaintiff's rejected claim as required by section 11720, Revised Statutes 1919. In other words defendant contends that plaintiff should have filed an independent action on her claim disconnected from the proceedings pending on the commissioner's report.

If defendant's contentions be correct, then no suit was ever brought on said claim and for that reason it would be barred by limitation.

The statute requires the commissioner in charge of an insolvent bank to present all approved claims to the circuit court for determination as to their priority of payment, but there is no statutory provision requiring the commissioner to present rejected claims to the circuit court. As heretofore shown, the statute provides that when a claim is rejected by the commissioner, the claimant may bring suit thereon within the time specified in said statute.

Orderly procedure would perhaps dictate that plaintiff should have brought suit on her rejected claim independent of the pending proceedings. Regardless of whether or not plaintiff's petition was filed in the pending proceedings, if the proceedings had, amounted to the institution and determination of a suit on plaintiff's claim, the road traveled to reach that result is immaterial.

The record shows that plaintiff's petition was filed in time to avoid the bar of the statute. Defendants filed answer to this petition. By agreement of parties the cause was set for hearing and was tried and determined on the issues raised by the petition and answer. The court had jurisdiction of the subject-matter of plaintiff's claim. The filing of the answer gave the court jurisdiction of the person of defendants. We think the filing of plaintiff's petition was the institution of a suit on plaintiff's claim, regardless of the fact that the petition may have been filed in the proceedings pending on the commissioner's report theretofore filed. The court treated plaintiff's claim as an independent action. When the commissioner's report of his action on claims was called for hearing, the court by order entered of record, segregated plaintiff's claim from the commissioner's re-

port, continued the hearing of it to a later date, then tried and determined it on the issues raised by plaintiff's petition and defendant's answer, separate and apart from any other proceedings and in every way treated it as an independent suit. On the showing thus made. we hold that the filing of plaintiff's petition within the statutory time was the institution of a suit and avoids the bar of the statute.

Defendant contends that the petition does not state a cause of action in that it does not allege that the bank had any assets at the time the commissioner took charge of it's affairs, or that any assets passed into the hands of the commissioner. It is true that the title to the $4000 in question did not pass to the bank and for that reason the bank held this money in trust for plaintiff, but this fact alone does not entitled plaintiff to a preferred claim. In order to establish a preferred claim against the assets of the bank, plaintiff must trace the trust fund into the hands of the commissioner. [Lomax v. Linn County,Bank et al., 1 (2a) S. W. 206, 209 and cases cited; William R. Compton Co. et al. v. Farmer's Trust Co. of Grant City et al., 279 S. W. 746, 749.] This holding is bottomed on the theory that all creditors of an insolvent debtor must stand on equal footing and share the assets of their insolvent debtor ratably, unless creditors seeking preference show that the insolvent debtor has in his possession funds, which in equity belong to them, and not to the insolvent debtor. One creditor of an insolvent debtor has no right to have his claim paid out of *funds belonging to another creditor* because *such funds* happen to be in possession of the insolvent debtor.

However, in cases where a trust fund is mingled with the general assets of the bank, and the entire fund so mingled is used in the general business of the bank, the bank cannot take advantage of its own wrong in mingling said funds, and insist that the claimant of the trust fund show that the specific fund claimed is in the hands of the commissioner in charge of the assets of the bank, but on account of the wrongful act of the bank in mingling such funds and thus making it impossible to trace and identify the trust fund, the entire assets of the bank will be subject to a lien in favor of the claimant of the trust fund. [Nichols v. Bank of Syracuse, 278 S. W. 793, 797.]

The petition does not allege that the $4000 trust fund, or any other fund was in the possession of the insolvent bank at the time it ceased to function as a bank, or that any funds ever passed into the hands of the commissioner of finance, who took charge of the affairs of the bank. For these reasons the petition failed to state a cause of action. [William R. Compton Co. et al. v. Farmers Trust Co. of Grant City et al., 279 S. W. 746, 749.]

There is no evidence in the record showing that any assets passed from the bank into the hands of the commissioners. There is attached to the abstract a typewritten statement certified to by the

deputy commissioner in charge of the bank, showing that the cash on hand from the assets of the bank amounts to approximately $16,000, and that the estimated unpaid expense is approximately $750, but this statement was not introduced in evidence and was not made a part of the record by agreement or otherwise. We cannot consider this statement because it is not a part of the record, but if it be a fact that the commissioner has $16,000 in his possession from the assets of this bank, justice demands that that case be remanded in order that plaintiff may allege and prove such fact, if she be so advised.

We have read and carefully considered the cases cited by appellant and find that they do not announce anything contrary to what we have already said.

Respondent makes the point that plaintiff's bonds were voluntarily left in the bank for safekeeping, without hire, and for that reason the bank was a gratuitous bailee. It being conceded that the $4000 involved in this suit was not invested in bonds, it is unnecessary to discuss or consider this contention.

Judgment reversed and cause remanded. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.