Verla HALLMARK, Plaintiff-Respondent,

v.

Lawrence Ray STILLINGS,
Defendant-Appellant.

No. 12710.

Missouri Court of Appeals,
Southern District,
Division Two.

March 9, 1983.

James E. Curry, John H. Tharp, Ava, for defendant-appellant.

Scott B. Stinson, Mountain Grove, for plaintiff-respondent.

HOGAN, Judge.

This is an action in replevin tried to the court under the provisions of Chapter 533, RSMo 1978 and Civil Rule 99.[1]  Plaintiff had judgment and defendant appealed.  Because the judgment rendered was not in the form contemplated by Rules 99.12 and 99.-13, this court reversed and remanded the cause for entry of a new judgment without addressing the merits of the appeal.  *Hallmark v. Stillings*, 620 S.W.2d 436 (Mo.App. 1981).  Upon remand, the trial court entered a new judgment; defendant again appealed.  The appeal is thus before the court for a second time but there is no "second appeal" in the sense that some "law of the case" has been established.

Plaintiff's cause was originally laid in two counts but we are only concerned with the count in replevin, on which the case was

---

**1.** References to statutes and rules are to RSMo 1978 and Missouri Rules of Court (11th ed. 1980), except where otherwise noted.

tried. The substance of the count in replevin is that on and prior to October 23, 1976, plaintiff and her husband owned 8 head of horses and 45 diverse items of personal property as tenants by the entirety. The various animals, machines and other items of personal property were listed, the list was denominated Exhibit "A" and was attached to and incorporated in the petition as provided by Rule 55.12. We shall not attempt to reproduce the schedule here; it is set out as an appendix to the court's prior opinion, 620 S.W.2d at 438. Plaintiff further averred that her husband died on October 23, 1976; that thereafter defendant took all the personalty listed in possession, although plaintiff was, at all times material, entitled to immediate possession of the personalty listed.

Pleading in anticipation, plaintiff alleged that any claim defendant had to the property arose out of and was based on a promissory note and chattel mortgage allegedly executed by plaintiff's deceased husband on May 15, 1976, and that if the note and mortgage were executed as appeared on the face of those instruments, they had been executed without plaintiff's knowledge or consent. Averring that defendant's taking had been "willful, wanton, malicious and fraudulent," plaintiff prayed delivery of the items listed, or in the alternative, for damages in the amount of $10,000 and for punitive damages in the sum of $25,000.

Upon remand, the trial court entered a judgment, finding: 1) That at all times subsequent to October 23, 1976, plaintiff was entitled to possession of the personal property in issue, as shown by an exhibit received in evidence and attached to the judgment; 2) that defendant had no right to possession of any of the personalty; 3) that on or about October 25, 1976, defendant took possession of all the items listed in Exhibit "A";[2] 4) that the value of the personalty taken was $11,005; 5) that the actual damages sustained by plaintiff because of defendant's wrongful taking of the

personalty was $11,005, less the value of any specific items plaintiff might elect to recover in kind pursuant to Rules 99.12 and 99.13; further, plaintiff had suffered nominal damages by reason of the taking and detention of the items listed on Exhibit "A", to which the court assigned no specific value for purposes of execution; 6) that defendant's conduct in the taking of the personalty was "willful, wanton, malicious and without just cause" and therefore plaintiff was entitled to punitive damages in the sum of $5,000, in addition to her actual damages.

The plaintiff has filed an election. She has elected to recover an Appaloosa stallion, a 14-foot covered stock trailer and eight other specific chattels, otherwise to have a money judgment in the sum of $5,085.

In this court, the defendant has briefed several diffuse points. The first of these is that plaintiff did not prove a right to immediate possession of the chattels, which, as defendant maintains, is a necessary prerequisite to recovery in replevin. The facts bearing on this point, as the trial court might have found them to be, were that plaintiff and her husband were married a little more than 19 years before they finally separated in September 1976. At the time of separation, plaintiff and her husband were living just west of Ava, Missouri, on a "farm-like" place. Plaintiff's husband left, stayed away several weeks and returned. Because Mr. Hallmark was a horse fancier, he wanted to attend to the horses personally. He asked the plaintiff to find another place to live. She obliged by taking the children to Wasola, a small community southeast of Ava, in Ozark County.

During the next three weeks, the plaintiff went to Ava several times, perhaps daily, to attend to an Appaloosa stallion which required water and feed twice daily. This stallion—Judge's Choice—is and has been the object of particular concern in this case. Plaintiff described this animal as a registered stallion, 12 years old at trial

---

**2.** The list of articles is identical to that shown as an appendix to our prior opinion, *Hallmark* *v. Stillings,* supra, 620 S.W.2d at 438.

time, which she and her husband had shown and bred for profit. Plaintiff valued Judge's Choice at $5,000, so he accounts for almost half the value of the personalty in issue.

In any case, plaintiff had left much of the personalty she now claims at Ava when she moved to Wasola. During the 3-week period following her move to Wasola, and while she was traveling back and forth, plaintiff found things at Ava much as she had left them. On October 23, 1976, plaintiff's husband was shot and killed at Wasola by a stepson. When plaintiff returned to Ava on October 25 she found that "[n]othing was there." This action followed, in circumstances to be noted.

To establish her right to possession of the property, plaintiff had the following evidence: She testified that neither she nor her husband brought any substantial assets into the marriage.[3] She further testified that she and her husband acquired personal property, but no realty, during their marriage, and explained that because she and her husband were separated, she was not in actual possession of the personalty claimed in this action at the time it was taken.

Thereupon, counsel proceeded to inquire specifically about several items listed on schedule "A". Being asked to "list for the Court the items of personal property" she and her husband owned at the time of their separation and acquired during her marriage, plaintiff began with an Appaloosa stallion—Judge's Choice—which she and her husband had shown and "put . . . out to stud" for profit. Plaintiff stated the value of this horse was $5,000. She further testified that she and her husband also owned

an additional seven head of horses, of the value of $3,050. Plaintiff also specifically testified concerning a 14-foot horse trailer of the value of $500; a show saddle, worth $250, and a wood heater of the value of $200.

At this point, counsel offered her exhibit 2, the schedule upon which the judgment is based, with the explanation that the exhibit was "a list of items that this plaintiff would testify were in the possession of her husband . . . when she separated with [sic] him and were left at the farm house west of Ava, and this list includes the values that she would testify to." Being asked if he had objection, counsel for the defendant replied "No, Judge. We do not agree, of course, to these values, but in the interest of brevity we will agree that's what this witness would testify to if she were asked."

Our courts have held on many occasions that a husband and wife may hold personalty as tenants by the entirety.[4] So, by analogy to estates in realty, each tenant holds the property per tout and not per my and upon the death of one tenant, the survivor does not succeed to the whole estate but continues to hold the estate as a sole owner. *Coffey v. Coffey,* supra, 485 S.W.2d at 170[1–3]. This court has time and again held that when spouses make a mutual effort to accumulate property during the marriage, and there is no contrary agreement, the fruits of their common purpose become an entirety.[5] Predictably, the precedents cannot be easily reconciled, in part because the analogy between an estate in land and an interest in personalty is incomplete, and in part because ownership

---

3. Defendant objected to the question ". . . did either of you bring any substantial [assets] into the marriage?" *after* plaintiff had answered "No." and counsel stated "Well, I'll withdraw the question." Because there was no motion to strike, both the question and the answer remain in the record. *Ashley v. Williams,* 365 Mo. 286, 293, 281 S.W.2d 875, 880[8] (1955); *Brown v. Krey Packing Company,* 271 S.W.2d 234, 237[1] (Mo.App.1954). Inasmuch as the question and answer were perfectly proper, we consider them in evidence now under Rule 73.-01(3)(c).

4. See, e.g., *In re Wetteroff,* 324 F.Supp. 1365, 1368[1, 2] (E.D.Mo.1971), aff'd 453 F.2d 544 (8th Cir.1972); *In re Estate of King,* 572 S.W.2d 200, 210–211[14] (Mo.App.1978); *Coffey v. Coffey,* 485 S.W.2d 167, 170[1–3][4] (Mo.App. 1972); *Ryan v. Ford,* 151 Mo.App. 689, 695, 132 S.W. 610, 612 (1910).

5. *Fulton v. Fulton,* 528 S.W.2d 146, 158[30] (Mo.App.1975); *Ray v. Ray,* 336 S.W.2d 731, 737–738[4–7] (Mo.App.1960); *Smith v. Smith,* 300 S.W.2d 275, 281–282[10–12] (Mo.App. 1957).

of some types of personalty, e.g., a chose or contract right such as an interest in a joint bank account, is ordinarily indicated by a formal instrument of creation or transfer, while other kinds of personalty are ordinarily acquired without any instrument of acquisition or transfer except such as would be hearsay itself.

The personal property with which we are concerned—livestock and household furnishings—are not items to which one ordinarily acquires a formal "title." The question of ownership is not a matter of law, and oral evidence from a witness with knowledge concerning ownership of such chattels is competent, primary evidence of the fact of ownership.[6] The plaintiff testified that she and her husband acquired and owned the property she sought to replevy. This was competent, direct evidence of ownership. Inexplicit as plaintiff's testimony was, it was nonetheless sufficient to permit the inference that all the personalty in issue had been jointly acquired by the plaintiff and her husband without limitation or condition, and therefore became entirety property. See *Ray v. Ray*, supra, n. 5, 336 S.W.2d at 737; Baxter, Marital Property § 4:5, pp. 53–54 (1973). Our review of the record generates no firm belief that such an implied finding is wrong.

Defendant broadly asserts that because plaintiff and her husband executed a division of property in anticipation of a divorce, they "changed" the nature of their interest in the property. Counsel is mistaken. A division of property by spouses who intend to be divorced may be made by separation agreement pursuant to § 452.325 and such an agreement preempts a judicial division of the marital property, but such an agreement does not become operative without a hearing and a judicial determination that the agreement is conscionable. *Wilhoit v. Wilhoit*, 599 S.W.2d 74, 77, 78–

79[2][6][7] (Mo.App.1980); *Block v. Block*, 593 S.W.2d 584, 591–592[11][12] (Mo.App. 1980). No such hearing was ever held and no judicial approval of the property settlement agreement was ever obtained. The agreement did not operate to divide the property.

Defendant also asserts that because the plaintiff filed her sworn statement in a probate case stating that the property in issue belonged to her husband, she in effect disavowed title. The exhibit tendered to prove this "disavowal" is a single document entitled "Affidavit to Discover Assets," in which plaintiff avers "that she has good cause to believe and does believe that [defendant] has concealed, embezzled or is otherwise unlawfully withholding certain personal property of [plaintiff's deceased husband]." Listed are: 8 horses, 1 Charolais cow, 2 trucks, a 14-foot horse trailer and a heating stove. The instrument is manifestly an affidavit to discover assets filed pursuant to former § 473.340, RSMo 1969, as amended Laws of Mo.1973, p. 484.

Because a single document was so tendered, wholly without explanation, this court ordered the record supplemented pursuant to the discretionary power vested in the court by Rule 81.12(a). The probate division of the Circuit Court of Douglas County very promptly and courteously furnished this court with such record as it has concerning administration on the estate of plaintiff's husband, Leslie Eugene Hallmark. We find that on or about October 28, 1976, plaintiff filed an application for refusal of letters pursuant to § 473.090, RSMo (Supp.1973). The court issued an order refusing letters on November 4, 1976. Thereafter, on November 18, plaintiff filed a "petition to recover assets" in the probate court. Defendant disqualified the court; the matter was transferred to the circuit

6. *State v. Curry*, 473 S.W.2d 747, 749 (Mo. 1971); *Brown v. Brown*, 242 Ala. 630, 7 So.2d 557[1] (1942) [detinue to recover a cow and calf]; *Smith v. Armstrong*, 118 Mont. 290, 166 P.2d 793, 796[10] (1946) [action for conversion of horses; plaintiffs' agent with knowledge could testify to ownership of horses]; *Hawley*

*v. Bond*, 20 S.D. 215, 105 N.W. 464, 465–466 (1905) [action to replevy a cow; court holds owner may testify to ownership of livestock; suggests testimony concerning household goods is admissible]; See also 31 Am.Jur.2d, Evidence § 70, pp. 581–582 (1967).

court and upon defendant's motion to make the pleading more definite and certain, plaintiff filed the affidavit offered as an admission in this case. Plaintiff obtained new and different counsel who filed this replevin action. Subsequently, but before this case was tried, the appeal from probate court was dismissed.

Assuming, as we must, the regularity of the proceedings in the probate court, we conclude the "affidavit to discover assets" must be regarded as an abandoned or superseded pleading. Of course, the affidavit was filed in another and different proceeding, but by virtue of the amendments of 1973, Laws of Mo.1973, p. 485, a proceeding to discover assets had become an adversary proceeding, and our courts have tended to admit pleadings in other cases, even cases before filed in quasi-judicial tribunals, as admissions against interest, provided the admission is relevant and material to the issue being tried. *Ellegood v. Brashear Freight Lines,* 236 Mo.App. 971, 980, 162 S.W.2d 628, 634[8] (1942); see, generally, 4 Wigmore, Evidence § 1066, p. 76 (Chadbourne rev. 1972). Nevertheless, and unlike the application for workmen's compensation considered in *Ellegood,* supra, the affidavit offered as an admission was filed in a proceeding which had been dismissed. Consequently it stood as an abandoned or superseded pleading; it was not conclusive, but was only an evidentiary item to be weighed and considered along with the other facts and circumstances in the case.[7] The affidavit was not determinative.

Having thus discussed plaintiff's right to possession, we must abruptly turn to the circumstances of the taking and to the evidence of defendant's right to possession. Plaintiff testified that on October 24, the day after her husband's death, she returned to Ava and found things much as she had left them. The Appaloosa stallion, the horse trailer, the wood stove and the household items were still on the premises. On the following day, the stallion, the trailer

and the household furnishings were gone. Plaintiff thereupon called the defendant, a close friend of her husband's, to "[ask] if he knew anything about where [the property was]." Without objection, plaintiff then testified defendant, being asked about the "things . . . that were in the [Ava] house," answered ". . . the horses were in his corral and the trailer was there parked on his place." Plaintiff suggested she would "get the horses and things out of [defendant's] way as soon as I can." Defendant responded "we'll see." Defendant never returned any of the property to the plaintiff.

The plaintiff further testified that about 3 weeks after her husband's death, she learned that defendant claimed possession of the personalty taken from Ava because plaintiff's husband had mortgaged the property to the defendant. The mortgage was executed without plaintiff's knowledge and without her consent. Still later, plaintiff had seen the Appaloosa stallion at defendant's residence and had seen defendant at "the sale barn" with three of the horses which had been taken. Plaintiff had asked what defendant intended to do with the horses; defendant responded: "I'll do what I want . . . with them."

The instrument upon which defendant based his claim to possession, as far as we can deduce from the record, is a chattel mortgage dated May 15, 1976. The instrument is denominated a "Chattel Mortgage with Power of Sale" and secures a promissory note of the same date. The note is an installment note in the amount of $5,000, payable in annual installments of $1,000, beginning May 15, 1977, with interest at the rate of 8 percent per annum. The note is signed by plaintiff's husband as maker; it is payable to the defendant.

The chattel mortgage assigns as security the following items: A 1969 truck; a 14-foot stock trailer; a wood heating stove; another truck, 1 cow, 3 years old; 8 horses,

7. *Bledsoe v. Northside Supply & Development Co.,* 429 S.W.2d 727, 730[3], 35 A.L.R.3d 599, 608 (Mo.1968); *Hartvedt v. Harpst,* 173 S.W.2d 65, 68[4] (Mo.1943); *Conduitt v. Trenton Gas &* *Electric Co.,* 326 Mo. 133, 142, 31 S.W.2d 21, 24[1][2] (1930); *Berry v. Berry,* 620 S.W.2d 456, 458[3] (Mo.App.1981).

described as "one Stud, 3 mares, 2 foals and 2 2 year old [sic]"; 1 Heiford [sic] Imperial Saddle and all tack; a welder and all shop tools. Although the mortgage is dated May 15, 1976, it was not filed in the Douglas County Recorder's office until October 25, 2 days after the plaintiff's husband died.

Setting aside all questions of form and assuming the note and mortgage were executed by plaintiff's husband, plaintiff's testimony, which the court was free to believe, was that she had no knowledge of the transaction; that when the note and mortgage were made, there had been no division of any marital property, and plaintiff had not consented to any disposition of the property she and her husband owned. As we have already found and decided, the personalty was entirety property. It is elementary that neither spouse may encumber nor adversely affect the entirety estate without the other's consent; no lien may arise from one spouse's pledge of entirety property as security for a loan, and a creditor who contracts with a married person is charged with constructive knowledge that the party with whom he contracts may hold property by the entirety.[8] The defendant acquired neither a lien nor a security interest in the mortgaged property by reason of Mr. Hallmark's unilateral action. And if it might be said that he had a reason to take the property in possession initially, the record discloses none for *retaining* the property or disposing of it after he became aware of the plaintiff's interest.

The defendant asserts there was no evidentiary basis for a finding that he took the property, or, that if he took it, he took all of it. We cannot agree. The list of items which constituted Exhibit "A" to the judgment was identified as a schedule of the personalty plaintiff left in her husband's possession when she moved to Wasola. She further stated that on October 25, 1976, when she returned to Ava, all the property was gone. In addition, when she

asked defendant if he knew where all this property had gone, defendant said ". . . he had taken them to his place . . . ." There was also testimony from defendant's wife that some of Mr. Hallmark's clothing and some firearms were in a shed at defendant's residence. The plaintiff had seen some of the property she claimed in the defendant's possession. Of course, defendant's wife also testified that Mr. Hallmark's clothing and his rifles were in defendant's possession because Mr. Hallmark had left them there, but the trial court, as trier of fact, was at liberty to believe her testimony in part and disbelieve it in part. *Cockrum v. Cockrum,* 550 S.W.2d 202, 205 (Mo.App.1977); *Long v. Lincoln,* 528 S.W.2d 512, 513 (Mo.App.1975). The specific questions and answers called to our attention, e.g., whether or not plaintiff "learned" that defendant had "sold" some of the horses did not constitute hearsay unless witness' answers were shown to have been founded on hearsay. Rather, the witness' answers were objectionable as conclusional. See 7 Wigmore, Evidence § 1960, p. 128–130. Counsel did not pursue those specific conclusional answers to determine whether or not plaintiff's conclusions were founded on hearsay; he merely asserts that they were. And, even without the conclusional testimony, the record is sufficient to warrant a finding that defendant took all the property plaintiff now claims. The principle which controls this point is that a trial court may draw all reasonable and legitimate inferences from the evidence before it and base its ultimate findings upon such reasonable inferences. *State ex rel. Eagleton v. Patrick,* 370 S.W.2d 254, 257[5], 97 A.L.R.2d 1180, 1184 (Mo.1963); *School District of Springfield R–12 v. Transamerica Insurance Co.,* 633 S.W.2d 238, 249[17] (Mo.App.1982).

The defendant maintains there was no basis for an assessment of punitive damages. We cannot agree. "Where replevin is brought to establish the right of

---

**8.** *Stewart v. Shelton,* 356 Mo. 258, 265, 201 S.W.2d 395, 398 (1947); *Kaufmann v. Krahling,* 519 S.W.2d 29, 31[1, 2][3] (Mo.App.1975); *Bank of Jasper v. Langford,* 459 S.W.2d 97, 99–100[1–4] (Mo.App.1970); *Freeman Contracting Company v. Lefferdink,* 419 S.W.2d 266, 272–273[2–5] (Mo.App.1967).

property which has been fraudulently or wrongfully obtained, it serves also the purpose of an action of trespass, in which the jury may find the value of the thing and also vindicatory damages." Cobbey, Replevin § 925, p. 500–501 (2d ed. 1900). Such damages must be pleaded and proved, but "legal malice" as distinguished from "actual malice" is sufficient to support an award of punitive damages, and the standard for legal malice is that there be a wrongful act intentionally committed and without just cause or excuse. A sedate, deliberate mind and formed design are unnecessary. *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51, 58[13–15] (Mo. banc 1981); *State ex rel. United Factories v. Hostetter,* 344 Mo. 386, 391, 126 S.W.2d 1173, 1176[4] (1939); *Lampert v. Judge & Dolph Drug Co.,* 238 Mo. 409, 419, 141 S.W. 1095, 1098[5], 37 L.R.A., N.S. 533, 537 (1911).

It must be remembered that our statutory scheme permits the maintenance of an action in replevin without the giving of a statutory bond; the case merely proceeds to judgment without taking the property. *Stephens v. Steckdaub,* 202 Mo.App. 392, 396, 217 S.W. 871, 873[2] (1920). There was neither a bond nor redelivery bond in this case, presumably because plaintiff was without means to furnish a bond. In the event, defendant's claim to a right of possession rested wholly and solely upon the note and mortgage dated May 15, 1976.

In this connection there was evidence, from the plaintiff's son, that some of the mortgaged property, e.g., the wood heating stove, the show saddle and one of the foals, was not owned by the plaintiff and her husband at the time the mortgage was signed; there was evidence that plaintiff and her husband and their eldest son discussed financial matters, but plaintiff's husband never mentioned a $5,000 loan from the defendant and showed no increase in affluence in May 1976. The mortgage purports to cover a 3-year-old cow and a wood stove heater, which plaintiff was to receive under the property settlement agreement; however, defendant's mortgage is not mentioned in the property settlement agreement, wherein the plaintiff's husband prom-

ised to pay "all mortgages on [the] household goods in the approximate amount of Four Hundred Dollars."

Further, the loan secured by the mortgage was made by a very close friend of plaintiff's husband, and the mortgage covered a substantial amount of the mortgagor's property. There was also evidence of inadequacy of consideration: the horses alone were worth more than the amount of the loan. The defendant remained mute throughout the trial. In short, the mortgage bore badges of fraud, and the trial court could readily have found the mortgage fraudulent and void. See *Cohoon v. Cohoon,* 627 S.W.2d 304, 307[6] (Mo.App. 1981); *Harrison v. Harrison,* 339 S.W.2d 509, 515–516[7] (Mo.App.1960). The trial court also could have considered the fact that defendant took the property before any event of default occurred, and the fact that he took *all* the property on the premises at Ava, a good deal of which was not covered by the mortgage. When a defendant in replevin claims a right to possession under color of an instrument which appears to have been contrived or perhaps actually created by him, a court is justified in assessing plaintiff punitive damages. *Miller v. Bank of Pecatonica,* 83 Ill.App.3d 424, 38 Ill.Dec. 658, 661, 403 N.E.2d 1262, 1265[4] (1980). The mortgage may have been perfectly regular. We only say that the trial court could reasonably have found otherwise, and in the circumstances an award of punitive damages was justified.

We find no error materially affecting the merits of the action; accordingly the judgment is in all respects affirmed.

MAUS, P.J., and PREWITT, J., concur.