# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1267

_____

| | | |
|---|---|---|
| Tylene J. Coonts, Larry Coonts, and Robert M. Sweere, | * * * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| John Potts, Sr., Gary Koop, Vernon Johnson, Trampus Taylor, and Hobie Johnson, | * * * * | |
| Appellees. | * | |

_____

Submitted:   September 13, 2002

Filed:   January 3, 2003
_____

Before LOKEN, RILEY, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

Tylene and Larry Coonts (collectively referred to as the "Coontses" and individually by their first names) appeal the District Court's[1] summary judgment in favor of Gary Koop, Vernon Johnson, Trampus Taylor, Hobie Johnson, and John

_____

[1] The Hononorable Gary A. Fenner, United States District Court Judge for the Western District of Missouri.

Potts (collectively referred to as appellees and individually by their last names). The Coontses sued the appellees on claims for violation of their civil rights, trespass, illegal arrest, malicious prosecution, and conversion revolving around the seizure of several pieces of furniture. The Coontses and their attorney also appeal the District Court's assessment of sanctions against counsel under Federal Rule of Civil Procedure 11. We affirm the District Court's decision.

*Facts*

The essential facts are not in dispute. This action stems from the appellees' retrieval through a writ of execution of furniture and appliances purchased on credit by the Coontses from Potts' business, Long Dollar Furniture and Appliance ("Long Dollar"), between December 1998 and April 1999. At the initial purchase in December 1998, the Coontses agreed that they would make payments of $200 a week on the debt. On April 16, 1999, Tylene signed a new sales contract that included all of the items purchased by the couple in December along with other newly purchased items. The total cost of the items purchased was $4,406.16, and at the time of signing the new agreement, the Coontses had paid approximately half of the debt. The contract stated that the Coontses would continue to pay $200 a week and that Potts and Long Dollar retained a purchase money security interest in all of the items until the debt was paid in full.

In the spring of 2000, the Coontses defaulted by failing to make several payments. Potts then filed a small-claims petition against Tylene in state court. The complaint requested the return of the items or payment of the remaining balance due thereon and late charges. In both a small-claims trial and a subsequent circuit court trial, the courts awarded judgment to Potts and Long Dollar. Tylene failed to satisfy the judgment in full and filed no further application for relief from the judgment or notice of appeal. Thereafter, Potts submitted to the circuit court clerk an "Execution/Garnishment Application and Order" along with a copy of the judgment. The clerk completed the writ of execution, signed it on behalf of the court as required

by statute, and forwarded it to the Douglas County Sheriff's Office to levy on the property.

On July 27, 2000, Sheriff Koop called Potts to inform him that deputies would be serving the writ that day and collecting the items listed. However, the sheriff indicated that his office did not have the means to transport or store the items. Sheriff Koop asked Potts to transport and store the items for the sheriff's department until they could have an auction to sell the items at a later date. The group then proceeded to the Coontses' residence to collect the items. To obtain access to the property, the group cut a padlock on the entry gate. As they neared the residence, Tylene refused them entry to collect the items. Consequently, Johnson arrested and handcuffed her, charging her with "interference with legal process" pursuant to Mo. Rev. Stat. § 575.160. She was taken to the police station and charged; however, she was never prosecuted for this violation. The property was not collected at that time.

The group returned to the Coontses' residence on August 1, 2000, to levy on the property and serve an unrelated eviction notice on the Coontses. The group again cut the gate lock, and upon entering the property, they encountered Tylene. Upon informing her that they were there to take the property, Tylene refused to allow them inside, and they again arrested her. She fought, kicked, hit, and attempted to bite the officers until they handcuffed her and placed her in a police car. Larry arrived at the house soon after and did not resist the levy. At that point, the officers released Tylene from the police car. When she reentered the home, she grabbed a candle and threw it at the large-screen television, one of the items the Coontses purchased from Long Dollar, and destroyed the screen. She was then arrested for interference with judicial process, resisting arrest, third-degree assault on a police officer, and property damage. At that point, the officers moved the items listed on the writ of execution from inside the Coontses' home to the porch, where Potts' employees took the items and loaded them on a moving truck.

After retrieving the items, Potts transported them to his store where he stored the property in the basement and marked the items with signs indicating that the property belonged to the Douglas County Sheriff's Department. Potts later contacted Sheriff Koop to inquire about the status of the items and when an auction might be held. Sheriff Koop indicated that he should continue to hold the items for the sheriff's department until the legal issues had been resolved. The items remain at the warehouse.

After the levy, the Coontses filed this lawsuit on February 20, 2001. They raised a civil rights claim under 42 U.S.C. § 1983, as well as other state law claims. The parties ultimately filed cross-motions for summary judgment. In an order issued December 27, 2001, the District Court granted the sheriff's and deputies' motion for summary judgment against the Coontses, and denied the Coontses' motion for summary judgment against the officers. The court issued a show-cause order to the Coontses' attorney and received his brief on the issue of Rule 11 sanctions. Thereafter, the District Court issued an order on January 11, 2002, assessing sanctions under Rule 11 (b)(2) in the amount of $2,000 against the Coontses' attorney for asserting frivolous claims for malicious prosecution, excessive force, and trespass, none of which counsel addressed in his briefs for summary judgment. Thereafter, on January 18, 2002, the District Court rendered the final order in the case by granting Potts' motion for summary judgment against the Coontses. The Coontses and their counsel appealed these orders on January 29, 2002.

## I.

Summary judgment is proper when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). We review a District Court's grant of summary judgment de novo. *Burk v. Beene*, 948 F.2d 489 (8th Cir. 1991). When considering whether to grant summary judgment, a court must

examine all "pleadings, depositions, answers to interrogatories ... admissions on file ... [and] affidavits." Fed.R.Civ.P. 56(c). We review de novo the District Court's interpretation of Missouri law. *See Salve Regina College v. Russell,* 499 U.S. 225, 231 (1991); *First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998).

II.

The Coontses raise nineteen points on appeal in a twenty-five page brief. It is unnecessary, however, to address all of these issues separately. The gravamen of the Coontses' appeal is whether the appellees violated their civil rights under § 1983[2] by seizing the property via the writ of execution. They allege that enforcement of the writ of execution violated their Fourth Amendment right to be free from an unreasonable seizure because the writ was not signed by a judge.[3] Because it was not, the Coontses contend it was issued without probable cause and is, thus, invalid. Additionally, they argue that the sheriff, the deputies, and Potts are not entitled to the protection of qualified immunity for their acts in enforcing the writ. As developed in this record, the Coontses arguments are unavailing.

---

[2]The statutory language in 42 U.S.C. § 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

[3]Missouri law does not require a judge's signature on writs of execution. The Coontses argue that the seizure was constitutionally *unreasonable* because a judge did not sign the facially-valid writ of execution. The Coontses, however, did not properly plead or argue the constitutionality of the Missouri statutes and rules allowing the issuance of a writ of execution by a court clerk following a final judgment.

In a § 1983 action against public officials or those acting with public officials, a plaintiff must show that the defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). However, before reaching the issue of whether such a right is "clearly established," the inquiry must first focus on whether the plaintiffs have actually asserted a violation of a constitutional right at all. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

A seizure under the Fourth Amendment occurs when there is "some meaningful interference with an individual's possessory interest in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992). In this case, the furniture and appliances were "seized" by the deputies pursuant to the facially-valid writ of execution. The seizure was authorized by Mo. Rev. Stat. § 105. 240, which allows officers to "break open doors and enclosures to execute a warrant or other process ... to levy an execution, or execute an order for the delivery of personal property" if the door or enclosures are not opened based on the officers' announcement of his purpose to the judgment debtor. The Coontses argue that this seizure violated the Fourth Amendment because a detached magistrate did not review the writ of execution for probable cause justifying entry into the house. However, the Coontses have not properly challenged the constitutionality of these statutes, and we, therefore, do not address this issue.

The writ of execution, therefore, was issued in conformance with Missouri and federal law.[4] Missouri law authorized the officers to enter the property to effectuate

---

[4]Under Missouri law, in order to levy on property, the creditor must file an application for a writ of execution, and the court clerk may issue the writ under Rules 76.01 and 76.02 of the Missouri Rules of Civil Procedure. Long-established Missouri and federal law indicates that a final judgment alone is sufficient to allow the court clerk to issue a writ of execution to levy on property sufficiently described in the judgment. *See Yazoo & M.V.R. Co. v. Clarksdale*, 257 U.S. 10, 19 (1921); Mo. Rev. Stat. § 513.015 (2002); *Fielder v. Fielder*, 671 S.W.2d 408, 410 (Mo.App. E.D.

the seizure, and they seized the property after the Coontses received notice and an opportunity to be heard. Based upon the undisputed facts viewed in the light most favorable to the Coontses, we hold that the deputies conducted the levy consistent with presumptively valid state law, and their actions did not constitute an unreasonable seizure.

## III.

In their second grouping of arguments, the Coontses assert that the deputies and Potts unlawfully took the property from the house in violation of the Coontses' due-process rights, and that the District Court erred by determining that Larry did not have a protected interest in the "marital" property as a tenant by the entirety. They assert that even if the authorities could validly remove property from Tylene's possession based upon a contract she alone signed, they could not do the same with respect to Larry, who had not signed the second agreement.

The District Court determined that Missouri law does not allow personalty to be held in entirety by a husband and wife. Although Missouri law does, in fact, allow spouses to hold personalty as tenants by the entirety, this feature of Missouri law does not benefit the Coontses in this case. *See Hallmark v. Stillings*, 648 S.W.2d 230 (Mo.

---

1984); *In re Marriage of Wofford*, 589 S.W.2d 323, 327 (Mo.App. S.D. 1979); *State ex rel. Keitel v. Harris*, 186 S.W.2d 31 (Mo. 1945). Furthermore, under Missouri law, it is not a prerequisite to an execution that an express order of the court be made for its issuance because the right to execute a judgment, unless validly stayed, accrues immediately upon rendition of that judgment. *Fielder*, 671 S.W.2d at 410-411 (citing *Griggs v. Miller*, 374 S.W.2d 119, 121 (Mo. 1963) and *State ex rel. Capitain v. Graves*, 190 S.W. 859, 861 (Mo. banc 1916)); *State v. Haney*, 277 S.W.2d 632, 635 (1955). In essence, the judgment acts as the judge's "signature" on the writ of execution, and the clerk's purely ministerial act of issuing the writ merely effectuates the court's judgment.

App. S.D. 1983).[5] The *Hallmark* holding does not support the Coontses' argument because the agreement in *Hallmark* was not for a purchase money security interest as it is here, and Missouri law makes a specific exception for this type of purchase in Mo. Rev. Stat. § 513.140, which states:

> Personal property shall in all cases be subject to execution on a judgment against the purchaser for the purchase price thereof, and shall in no case be exempt from such judgment and execution, except in the hands of an innocent purchaser, for value, without notice of the existence of such prior claim for the purchase money.

For Larry to claim an interest in the property, he would have to be an "innocent purchaser ... without notice of the existence of such prior claim for the purchase money." He cannot meet that burden here because he bought the first items as co-signor with Tylene, and he was present during the state court actions when the courts awarded Potts judgment against Tylene. Larry certainly was not an "innocent purchaser" who did not have notice of the existence of Potts' claim for the purchase money, nor was he denied his due-process rights to be able to state a claim to the property in the underlying action. Instead, the undisputed evidence shows that Larry failed to intervene to state his claim to the property in the state court action or file a replevin action or exemption claim thereafter to assert that the property was exempt from execution under Mo. Rev. Stat. § 513.140. Furthermore, because Larry and Tylene have shown no violation of a constitutional right, we affirm the District

---

[5]In *Hallmark*, a widow sued for replevin from a creditor who repossessed personal property from the widow's house based on a credit agreement the deceased husband signed prior to his death without his wife's knowledge. The appellate court ultimately determined that the wife owned the property by its entirety after her husband died, and that she was denied due process either in the execution of the original security interest or in the taking of the property after her husband's death.

Court's grant of summary judgment to the sheriff, deputies, and Potts based on qualified immunity for their actions in retrieving the items from the Coontses' house. *See Merritt v. Reed*, 120 F.3d 124, 126 (8th Cir. 1997) (reversing denial of summary judgment after qualified immunity inquiry where plaintiff failed to show violation of constitutionally protected right).

## IV.

Next, the Coontses argue that the District Court erred in granting summary judgment on their state-law claims. The District Court determined that the officers had probable cause to arrest her, but they incorrectly charged her with the wrong crime. There is a difference between unlawful arrest and charges named in error. *See United States v. Lester*, 647 F.2d 869, 873 (8th Cir. 1981) (validity of arrest does not turn on the suitability of the stated grounds for arrest but instead on whether the officers had probable cause to believe that an offense had been or was being committed); *State v. Shaw*, 81 S.W.3d 75, 78 (Mo. App. W.D. 2002) (test for determining validity of arrest is whether the officer had actual probable cause to arrest, not whether officer articulated the correct basis for the arrest).

The parties and the District Court agreed that Tylene should not have been charged with "interference with judicial process" because that violation only applies to interfering with the service of process. Here, the deputies served Tylene with process before she became combative; therefore, the violation does not apply to her conduct. However, the officers had probable cause to arrest Tylene for her actions in physically preventing the officers from performing a legal act and in assaulting them. Therefore, the District Court did not err in granting summary judgment to the appellees on the issue of "unlawful arrest."

Tylene next argues that the appellees maliciously prosecuted her for her conduct in reacting to the levy. The District Court ruled against her on this claim,

noting that the particular element of malice was missing from the six elements constituting malicious prosecution noted in *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803 (Mo. 1984). The elements are: (1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged. *Id.* at 806. A plaintiff must establish that the defendant acted either with ill will toward the plaintiff or from any other improper motive. *Id.* Tylene failed to prove that malice motivated the prosecution, and, thus, the District Court correctly granted summary judgment to the appellees.

## V.

The Coontses and their counsel appeal the assessment of Federal Rule of Civil Procedure 11(b)(2)[6] sanctions against counsel for asserting claims with no legal merit.

---

[6] Federal Rule of Civil Procedure 11 states in pertinent part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

\*\*\*

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;...

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

-10-

Specifically, the District Court determined that the claims for malicious prosecution, use of excessive force, and trespass were unsupported by the facts and law. The District Court assessed sanctions against counsel in the amount of $2,000.

---

(1) How Initiated.

***

(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

-11-

An award of sanctions under Rule 11 is reviewed by this court for an abuse of discretion. *Monterey Development Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 610 (8th Cir. 1993); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). The court has broad discretion in the choice of sanctions. *See Cooter & Gell*, 496 U.S. at 400 (citing Advisory Committee Note on Rule 11, 1983 Amendment). Due process is satisfied if the sanctioned party has a real and full opportunity to explain its questionable conduct before sanctions are imposed. *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1023 (8th Cir. 1999). Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing. *Miller v. Bittner,* 985 F.2d 935, 938 (8th Cir. 1993) (citing *O'Connell v. Champion Int'l Corp.,* 812 F.2d 393, 395 (8th Cir. 1987)). To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir.1991). Whether the attorney's inquiry is reasonable may depend on factors such as whether counsel had to rely on a client for factual information, or whether the attorney depended on forwarding counsel or another member of the bar. Fed.R.Civ.P. 11, Notes of Advisory Committee, 1983 Amendment and 1993 Amendment. The District Court must determine "whether a reasonable and competent attorney would believe in the merit of an argument." *Miller,* 985 F.2d at 939 (quoting *Dodd Ins. Servs. v. Royal Ins. Co. of America*, 935 F.2d 1152, 1155 (10th Cir.1991)).

We hold that the District Court did not abuse its discretion in assessing sanctions against counsel for bringing and continuing to assert the three meritless claims of malicious prosecution, excessive force, and trespass. As the District Court noted, Missouri law does not warrant these claims under the facts of this case, and counsel's assertions rise to the level of frivolous arguments that do not seek an extension of any of those legal theories. The District Court's well-reasoned opinion highlights the fallacies in counsel's claims that these causes of action were supported by the evidence. For example, the court noted that counsel asserted the claim for excessive force, arguing that the officers did not have probable cause to arrest Tylene

for her actions during the levy on the property. However, the undisputed facts show that Tylene kicked, hit, and attempted to bite the officers when they tried to retrieve the property, and she also destroyed the television by throwing an object through the screen. On appeal, counsel stated its disagreement with the District Court's determination, but counsel neither demonstrated in its appellate brief nor during oral argument that the District Court's sanction was an abuse of discretion. Consequently, we affirm the District Court in its assessment of the $2,000 fine against the Coontses' counsel.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.