**SOUTHWESTERN BELL TELE-PHONE CO. d/b/a AT & T Missouri, Respondent,**

v.

**AHRENS CONTRACTING, INC., Appellant.**

**No. ED 96415.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 10, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 24, 2012.

Leonard W. Buckley, Jr., St. Louis, MO, for appellant.

Ann E. Ahrens Beck, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Ahrens Contracting, Inc. (Defendant) appeals the judgment of the Associate Division of the Circuit Court of the City of St. Louis in favor of Southwestern Bell Telephone Co., d/b/a AT & T Missouri (Plaintiff). Defendant claims that the trial court erred in overruling Defendant's motion for a directed verdict because Plaintiff failed to prove a *prima facie* case of negligence under the Underground Facility Safety and Damage Prevention Act (the "Act"). We affirm.

### Background

On June 22, 2005, Plaintiff suffered damage to its underground telephone cable located near the intersection of Hampton and Chippewa in the City of St. Louis. Plaintiff dispatched multiple service technicians to the site, where a Target store was under construction. Upon arriving at the scene, Ricky L. James, Jr., a customer service technician for Plaintiff, observed Plaintiff's damaged cable "sticking out of the ground." James and other technicians photographed the damage site.

James's supervisor, Pat Roberts, was also notified about the damage. Roberts contacted SM & P Utilities (SM & P) and requested that it send a Certified Damage Investigator to the scene to investigate and prepare a report about the damaged telephone cable. SM & P dispatched Bob Schardin. Schardin took a series of eight photographs and wrote a "fact-based investigation report." Schardin's report stated that the general contractor for the Target store construction site was S.M. Wilson. The report concluded that the underground cable "may have been damaged by [Defendant] while grading."

Plaintiff sued S.M. Wilson for the damage to Plaintiff's cable, but S.M. Wilson denied that it performed the type of work that could have caused the damage. S.M. Wilson provided Plaintiff with the daily time log for the work occurring at the construction site on June 22, 2005. This time log revealed that Defendant, a subcontractor, had performed work removing sidewalks near the "front lot" of the construction site on that date. Plaintiff dismissed its suit against S.M. Wilson and filed suit against Defendant for negligent damage to Plaintiff's property in violation of the Underground Facility Safety and Damage Prevention Act.[1] On January 13,

1. The Underground Facility Safety and Damage Prevention Act provides, in pertinent part: "An excavator shall serve notice of intent to excavate to the notification center by toll-free telephone number ... or by facsimile or by completing notice via the Internet at least two working days, but not more than ten working days, before the expected date of

2011, the parties tried the case to the Associate Division of the Circuit Court of St. Louis County without a jury.

Plaintiff's first witness, James, testified that, when he arrived at the scene, he "saw [Plaintiff's] cable was damaged and [there was] some digging going on around it." Plaintiff's counsel showed James a picture of the damaged cable, and James stated: "That's our—that's our pulp cable damaged." He further explained: "[T]he copper is wrapped in plastic and then covered in a poly coating on the outside, with a turn plate, a metal turn plate on the inside to keep it from—protected."

David Ross, an employee of SM & P Utilities,[2] also testified for Plaintiff. Ross stated that SM & P was the "underground locating company" for Plaintiff. As the underground locating company, SM & P "answer[ed] locate requests generated by Missouri One Call[3] to locate the approximate location of underground facilities for excavation purposes." Ross testified that, at Plaintiff's request, he searched SM & P's database to determine whether Defendant or S.M. Wilson had sought a "locate request" for the area of the damage. Ross clarified that SM & P's database was linked to the Missouri One Call notification system. He confirmed that neither Defendant nor S.M. Wilson had sought a locate request for the area of the damage for sixty to ninety days prior to June 22, 2005.

Finally, Jon Becker, a Senior Risk Specialist for Plaintiff, testified as a corporate representative and non-retained expert. Becker testified that he worked for Plaintiff for over thirty-two years and that his "whole career [had] been in installation, repair, [and] maintenance" of Plaintiff's cable. Becker also testified that his job duties included determining fault for damage to underground cable. According to Becker, he reviewed the fact-based investigation report, the S.M. Wilson daily log, and the photographs taken by both Plaintiff and SM & P. Based on his review, Becker testified that the evidence indicated "somebody was digging at the front of ... Hampton and Chippewa, at the sidewalks." Plaintiff's counsel showed Becker a photograph of the damaged cable, and Becker testified that: "[The photograph] depicts a lead sheath cable, 600 pair, and if you can see, the paper is like a pink, and that's what the—our copper cable is wrapped in." Becker further testified that a "heavy piece of equipment" had caused the damage while "ripping sidewalks out and grading." Becker elaborated: "It had to be something large with a bucket that was pulling."

At the close of Plaintiff's evidence, Defendant moved for a directed verdict. The trial court overruled Defendant's motion.

Defendant's sole witness was Richard Politte, its supervisor at the construction site during June 2005. Politte testified that Defendant was "removing sidewalks and grading" on June 22, 2005, but stated that it was not doing work in the area where the damage occurred. On cross-examination, Politte admitted that Defendant had been using a "high lift, two Bob-

commencing the excavation activity." Mo. Rev.Stat. § 319.026.1 (2000 & Cum.Supp. 2011). The Act further provides, in pertinent part: "The failure of any excavator to give notice of proposed excavation activities as required by this chapter shall be a rebuttable presumption of negligence on his part in the event that such failure shall cause injury, loss or damage." Mo.Rev.Stat. § 319.040 (2000).

**2.** At the time of trial, SM & P Utilities had become United States Central Structure Corporation.

**3.** Missouri One Call apparently refers to the "toll-free telephone number" specified in the Act. *See* Mo.Rev.Stat. § 319.026.1 (2000 & Cum.Supp.2011).

cats, and a backhoe with a breaker" while doing its work. Politte explained that a "high lift" was a machine with tank-style tracks and a scoop on the front. Politte acknowledged that the high lift Defendant used was capable of severing a telephone cable. On cross-examination, Plaintiff's counsel showed Politte a photograph of the damage site taken on June 22, 2005. Politte admitted that a backhoe belonging to Defendant was positioned right next to the site of the damage in the photograph. Politte testified that Defendant used the backhoe on June 22, 2005 to "[c]arry[ ] material from the front of the building, across the sidewalk and down Chippewa," but denied that it was used on that date to excavate in the area where the damage occurred.

The trial court took the matter under submission. On January 14, 2011, the trial court issued a judgment against the Defendant in the amount of $13,177.98. This appeal followed.

### Standard of Review

■ Defendant contends that the trial court erred in overruling its motion for a directed verdict. However, because the parties tried this case to the court, and not to a jury, there was no verdict for the court to direct. *Bogart v. Dir. of Revenue*, 185 S.W.3d 286, 287 (Mo.App. W.D.2006). We consider a motion for a "directed verdict" in a court-tried case to be a motion for a judgment on the merits pursuant to Rule 73.01(b).[4] *See id.* We review the trial court's determination of a Rule 73.01(b) motion under the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Nautilus Ins. Co. v. I–70 Used Cars, Inc.*, 154 S.W.3d 521, 527

(Mo.App. W.D.2005). We affirm the trial court's judgment unless we find that "there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Nautilus*, 154 S.W.3d at 527 (*citing Murphy*, 536 S.W.2d at 32). In reviewing whether there was substantial evidence to support the trial court's judgment, we review the evidence and all inferences from the evidence in the light most favorable to the trial court's judgment, and we disregard all evidence and inferences to the contrary. *Nautilus*, 154 S.W.3d at 527.

### Discussion

■ In its first point on appeal, Defendant claims that the trial court erred in overruling Defendant's motion for a directed verdict because Plaintiff failed to establish a prima facie case of negligence under the Act. More specifically, Defendant contends that Plaintiff did not prove that it suffered any damage in that it failed to adduce substantial or credible evidence that it owned the damaged cable. In response, Plaintiff identifies numerous facts in the record that it contends are substantial evidence of its ownership of the cable.

■ Establishing ownership of personal property requires "minimal evidence" under Missouri law. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. banc 2010). A party may establish ownership by using "any competent evidence." *Id.* "[O]ral evidence from a witness with knowledge concerning ownership of such chattels is competent, primary evidence of the fact of ownership." *Hallmark v. Stillings*, 648 S.W.2d 230, 234 (Mo.App. S.D.1983). An employee of a

---

4. Rule 73.01(b) provides: "After the plaintiff has completed presentation of plaintiff's evidence, the defendant may move by motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief. The filing of such motion does not constitute a waiver of defendant's right to offer evidence." Mo. Sup.Ct. R. 73.01(b).

corporation can be a "witness with knowledge" of the corporation's ownership of chattel. *See, e.g., Renaissance,* 322 S.W.3d at 123 (*quoting Hallmark,* 648 S.W.2d at 234) (internal quotation marks omitted). *See also Krug v. United Disposal, Inc.,* 567 S.W.2d 133, 135 (Mo.App.1978) (holding that employee of corporation can testify as to value of corporation's property).

Here, Defendant concedes that James, a customer service technician for Plaintiff, testified that the damaged cable was "our cable." Nevertheless, Defendant contends that Plaintiff failed to demonstrate that James was "a witness with knowledge concerning ownership." *Hallmark,* 648 S.W.2d at 234. The record, however, demonstrates that James had ample knowledge of the ownership of the cable. James testified that, at the time of trial, he had worked for Plaintiff for about eleven and a half years and his job duties included "cable repair." James further testified that, when he arrived at the scene of the damage, he observed that: "[O]ur cable was damaged." When shown a photograph of the damaged cable, James identified the cable as "our pulp cable damaged" and testified in detail about its physical structure. Thus, the evidence demonstrated that James was a veteran employee of Plaintiff with detailed knowledge of the cable at issue in this case. He was clearly competent to testify about the ownership of the cable.

Furthermore, the record refutes Defendant's claim that the James's testimony is Plaintiff's "only evidence" of the ownership of the cable. Plaintiff also offered the testimony of Jon Becker, an employee of Plaintiff for over thirty-two years. Becker testified that his "whole career" had involved "installation, repair and maintenance" of Plaintiff's cables. While viewing the same photographic exhibit that James had viewed, Becker referred to the cable as "our copper cable" and identified the "pink paper" in which the cable was wrapped. Like James, Becker was clearly competent to testify about the ownership of the cable.

Defendant contends, however, that the oral evidence of ownership adduced by Plaintiff was not competent evidence of ownership because Plaintiff presented no witness with knowledge of Plaintiff's corporate structure. Defendant argues that Plaintiff is a "large and multifaceted company with numerous related entities." Without proffering a witness with knowledge of Plaintiff's corporate structure, Defendant contends, Plaintiff failed to prove that it specifically owned the damaged cable. As factual support for its argument, Defendant notes that when Plaintiff first sued S.M. Wilson for the damage to the cable, it sued as a "Texas limited liability company." However, when suing Defendant for the damage to the cable, Plaintiff sued as a "Missouri Corporation."

We do not find Defendant's argument persuasive. As an initial matter, Defendant cites no authority for the proposition that a corporate plaintiff suing for property damage must present evidence of its corporate structure in order to establish that it owns the damaged property. Furthermore, "a claim that a suit should have been filed in the name of a certain entity is waived if it is not raised by pleading or motion in accordance with Rules 55.13 and 55.27(g)(1)(E)." *Cornejo v. Crawford County,* 153 S.W.3d 898, 901 (Mo.App. S.D.2005). Rule 55.27(g)(1)(E) provides that a claim that a plaintiff lacks legal capacity to sue is waived if it is "[n]either made by motion under this Rule 55.27 nor included in a responsive pleading." Mo. Sup.Ct. R. 55.27(g)(1)(E). Here, Defendant made no motion under Rule 55.27 stating that Defendant lacked legal capacity to sue. Nor did Defendant

raise the issue in its responsive pleading. Rule 55.13 provides, in pertinent part:

When a person desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the person shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

Mo. Sup.Ct. R. 55.13.

■ In its response to Plaintiff's claim in its petition that it was a Missouri corporation in good standing, Defendant averred: "Defendant is without sufficient information to admit or deny the allegations set forth in Paragraph 1 of Plaintiff's Petition for Damages/Negligence, and therefore denies the same and demands strict proof thereof." A denial based upon insufficient knowledge or information and demanding "strict proof" of corporate capacity is not sufficient to constitute a "specific negative averment." *Berkel & Co. Contractors, Inc. v. JEM Dev. Corp.*, 740 S.W.2d 683, 685 (Mo.App. S.D.1987). When a defendant fails to properly raise the issue of plaintiff's corporate capacity, courts deem the defendant to have admitted it. *Fox Plumbing Supply, Inc. v. Kootman*, 955 S.W.2d 220, 222 (Mo.App. E.D.1997). Because Defendant admitted Plaintiff's corporate capacity to sue and Plaintiff's employees testified that it owned the damaged cable, Plaintiff produced substantial evidence that it owned the cable in question. Point denied.

■ In its second point on appeal, Defendant again claims that the trial court erred in overruling its motion for a directed verdict because Plaintiff failed to prove a prima facie case of negligence under the Act. As grounds for its second point, Defendant contends that Plaintiff did not adduce substantial or credible evidence that Defendant caused the damage to the cable. "To make a prima facie showing of causation, [a] plaintiff must show the defendant's negligent conduct more probably than not was the cause of the injury." *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 339 (Mo.App. E.D.2000). "[M]ere speculation or conjecture" is not sufficient evidence of causation, but the law does not require direct proof. *Kircher v. Purina Mills, Inc.*, 775 S.W.2d 115, 117 (Mo. banc 1989); *Coggins*, 37 S.W.3d at 339. Rather, a plaintiff may prove causation by "reasonable inferences from proven fact or by circumstantial evidence." *Coggins*, 37 S.W.3d at 339. The plaintiff need not exclude all other potential causes of the damage or prove "an absolutely positive causal connection." *Kircher*, 775 S.W.2d at 117.

■ Here, Plaintiff presented substantial circumstantial evidence that Defendant caused the damage to the cable. Becker, Plaintiff's expert, testified that the damage to the cable occurred while Defendant was "ripping sidewalks out and grading." Becker further testified that the damage was caused by a large piece of equipment with a bucket. Politte, the construction supervisor for Defendant at the site, admitted that Defendant was "removing sidewalks and grading" on the date of the damage. Politte also admitted that the "high-lift" that Defendant was using on the date of the damage had a "scoop" on the front and was capable of severing a telephone cable. Despite insisting that Defendant was not performing excavation in the area of the damage on June 22, 2005, Politte admitted that one of the photographs in evidence showed a backhoe belonging to Defendant positioned right next to the site of the damaged cable. This evidence was sufficient for the trial court to draw the reasonable inference that De-

fendant caused the damage to Plaintiff's cable. Point denied.

### Conclusion

The judgment of the circuit court is affirmed.

KURT S. ODENWALD, C.J., and ROBERT M. CLAYTON III, J., concur.